Filed April 19, 1894.

———————◆———————

No. 16,572.

ROBINSON ET AL. *v.* REINHART ET AL.

FRAUD.—*Conveyance of Real Estate.—Deceit and Misrepresentation.*—A conveyance of real estate procured by deceit, misrepresentation and abuse of confidence as to material existing facts will be set aside.

SAME.—*Ignorance of Grantor as to Facts.*—One who has procured a conveyance of real estate through fraud can not defeat its recovery by urging that the owner should have obtained knowledge of the facts before executing the deed.

SAME.—*What Constitutes Fraud.—Promise to do an Act in the Future.*—Fraud consists in the misrepresentation of an existing fact, and a promise to do a thing in the future is not fraud, although there be no intention of fulfilling the promise.

SAME.—*Delay in Suing.*—*Laches.*—To constitute such laches as will defeat an action to set aside a conveyance of real estate procured by fraud, the delay in bringing the action must be unreasonable under the circumstances of the case.

From the Lake Circuit Court.

*J. Stirlen* and *S. B. King*, for appellants.

*C. N. Morton*, for appellees.

HOWARD, C. J.—This was an action to quiet title to real estate in Lake county, brought by appellees against appellants.

The first paragraph of the complaint contains only general allegations in the usual form.

In the second paragraph of the complaint, it is alleged further that the appellee, Helen C. Reinhart, who is the wife of her co-appellee, Andrew A. Reinhart, obtained her title to said real estate in March, 1883, by warranty deed from one George T. Cline; that appellees are now, and for more than fifteen years last past have been, residents of and have constantly lived ar ᵔ sided in the State of Maryland; that when they purchased said land of Cline, they made arrangements with him, inasmuch as they were nonresidents of the State of Indiana, whereby he agreed to look after and keep the taxes on said land paid up for them; that in October, 1861, one Salmon P. Gorden, who was then the owner of said land, sold and conveyed the same to one Young, both of whom are remote grantors of said Cline and of appellees, and said Gorden has never since had or owned any interest in said land. That on July 17, 1891, a man named Stirlen, who claimed to be a member of the firm of Stirlen & King, attorneys at law of the City of Chicago, came to appellees, in their place in the City of Baltimore, Maryland, and having introduced himself to them, said that he was there to see them as the attorney and

agent of said Salmon P. Gorden, who was the rightful
and lawful owner of said lands, to obtain from them a
quitclaim deed for the same, and thereby save them the
trouble and expense of the litigation which would other-
wise follow in an action by said Gorden to quiet his title
to the land; which action, he said, Gorden had already
commenced in the Lake Circuit Court; that said Gorden
had never conveyed the land to any one, and that the
said deed from Gorden was a forgery; that Gorden had
also bid off the land at tax sale, and had a tax deed for
the same made since Cline had made the deed to appel-
lees; that Cline had no title to the land whatever when
he deeded the same to appellees, nor at any other time; that
Cline was liable on his covenants of warranty to the
amount of whatever appellees had paid him for the
land, with interest; that Gorden would rather pay ap-
pellees whatever it would cost to carry on the law suit to
quiet his title to the lands; that if they would execute a
quitclaim deed to Gorden for the land, he would pay
them fifty dollars, and also bring suit for them against
Cline on his covenants of warranty to recover the
amount with interest which they had paid him, for
twenty-five per cent. of what he should recover; that
the land was of little value any way, and Gorden was
anxious to get the matter fixed up as cheaply as possi-
ble. It is further alleged that Stirlen had the appear-
ance of a gentleman and a man of truth and honor; in
consequence of which, they, not having any means of
knowing to the contrary, believed and relied upon his
statements and representations to be true, and, so be-
lieving and relying upon them, they said to him that if
his statements were true, if he would pay them one
hundred dollars instead of fifty, and would prose-
cute the suit against Cline as aforesaid, they would
execute a quit claim deed for said land to Gorden;

that thereupon said Stirlen again asserted that all of
his statements and representations were true, and ac-
cepted appellees' proposition and paid them the hun-
dred dollars, and appellees thereupon signed and
acknowledged what they supposed to be a quit-
claim deed to Salmon P. Gorden for said land and de-
livered the same to said Stirlen; that appellees have since
learned that said deed so executed by them now purports
to be executed to Le Roy L. Reading, one of the appel-
lants, instead of to Salmon P. Gorden, and that on July
20th, 1891, three days after the date of said deed, LeRoy
L. Reading conveyed said land by deed to himself and
the other appellants as co-partners of the firm of Robin-
son Bros. & Reading, of Chicago, Illinois, who now
claim title to said land; that appellees have since learned,
and now charge it to be true, that all of the statements and
representations herein charged to have been made by said
Stirlen to appellees in regard to said land and the title
thereto and the value thereof, and as to whom he repre-
sented, were absolutely false and fraudulent, and known
to be so by said Stirlen when so made, and were made
by him with intent then and there to cheat and defraud
appellees, and fraudulently obtain from them the title to
said lands for a nominal sum; that said Stirlen was not,
as stated by him to appellees, acting as the agent or at-
torney of Salmon P. Gorden in said transaction, but was
in fact, and in truth, sent by appellants, and was acting
as their agent and under their authority and instruc-
tions in all things, and without the knowledge or consent
of the appellees or either of them, wrongfully, and against
their will, caused the name of LeRoy L. Reading to be
inserted in said deed instead of Salmon P. Gorden; that
as soon as appellees discovered said facts, and that they
had been cheated and defrauded out of their lands, and
before the commencement of this suit, they tendered

back to appellants all the said money so paid to them by said Stirlen, to wit: one hundred dollars, and demanded of them a conveyance back to appellees of the title conveyed by appellees to said Reading, all of which they refused to do, but, on the contrary, said that they were determined to fight it out to the bitter end, which tender they now bring into court and deposit with the clerk; that said lands were, on July 17th, 1891, and still are, worth five thousand dollars. Asking that appellants' claim of title to said lands be declared null and void, and that appellees' title to the same be quieted; that said deeds to LeRoy L. Reading, and from him to all of appellants be set aside and declared null and void, etc.

A plea in abatement, claiming another suit pending between the same parties, on account of the same matter, was filed by appellants, but afterwards withdrawn.

An answer in three paragraphs was then filed, the first being in general denial, and claiming title in appellants; the second in denial of false representations and fraud in obtaining the deed from appellees to Reading, and claiming that by reason of said deed appellees were estopped to claim title; and the third denying any representations, true or false, concerning said title, as ever made by Stirlen, or any one else, on the part of appellants to the appellee Helen C. Reinhart.

There was a trial by the court, and a finding and judgment for the appellees, and appellants were enjoined from setting up any claim to said land, and the deed from appellees to Reading was set aside as fraudulent, null and void.

The errors assigned are: 1, the finding for the appellees; 2, the overruling of the motion for a new trial; 3, the entering of judgment in favor of appellees and against appellants.

The reasons given in the motion for a new trial, are:

1, that the decision of the court is not sustained by sufficient evidence; 2, that the decision of the court is contrary to law.

If the decision of the court is sustained by sufficient evidence, and is according to law, then the finding and judgment were correct, which disposes of the first and third assignments of error. It remains to decide whether, under the second assignment of error, the evidence sustains the decision, and whether the decision is according to law.

As to the first point, the only contention made by appellants is that the proof did not correspond with the allegations with respect to the representations. We have, however, read the evidence, and find that Andrew A. Reinhart's testimony is full and detailed on this point, and that he is corroborated by the testimony of Helen C. Reinhart and that of H. M. Reinhart. The testimony of John Stirlen, who made the representations, is also, in some degree, corroborative. He admits that he told Andrew A. Reinhart, at the time he was trying to have the quitclaim deed made, that Cline's deed, made to appellees in 1883, was not good for anything.

It is next contended that the representations are not material, and that the appellees were not induced to act upon the representations alone, but a promise was a material inducement thereto.

Amongst the representations made by Stirlen, as alleged in the complaint and sustained by the proof, were: That he, Stirlen, was agent and attorney of Salmon P. Gorden, who was the lawful owner of the land; that Gorden wanted a quitclaim deed to the land, to save appellees the trouble and expense of litigation in his suit already commenced to quiet title against them; that the deed from Gorden was a forgery; that Gorden had bid in the land at tax sale, and had a tax deed for it, made

since Cline's deed to appellees; that Cline had no title to the land at the time he deeded it to them; that Cline was liable on his warranty for the consideration they had paid him; and that the land was of little value any way, and Gorden was anxious to get the matter fixed up as cheaply as possible.

There is scarcely a question that all these representations were false; some of them were, on the trial, admitted to be untrue, and all of them were shown, by the evidence, to be without foundation.

There can be as little question that the representations were material. Andrew A. Reinhart identified John Stirlen, of the law firm of Stirlen & King, Chicago, as the gentleman who, after presenting the business card of his legal firm, made the representations. Said appellee then gave detailed evidence showing how appellees relied upon the truth of these representations and were thereby induced to make the deed and so avoid useless litigation; that he acted for his wife, and made known to her all that Stirlen had impressed upon him. She testifies that in signing the deed she relied on the truth of the representations as so communicated to her, saying: "If I can't trust my own husband, who can I trust?"

The appellees were, for fifteen years, residents of Maryland, lived a thousand miles from the land, of which they had but the slightest knowledge, relying almost wholly upon their warranty deed from Cline, which deed was executed and acknowledged in the State of Maryland. When Stirlen came on with his perfected and skillful story that the deed from Gorden was a forgery, and that appellees' title from Cline was of no value, and the land of little consequence any way, it is easy to understand that the court might well believe the representations quite material in influencing the minds of

appellees to make a deed for one hundred dollars of lands shown to be worth near four thousand.

In *Peter* v. *Wright*, 6 Ind. 183, it was said, by Judge STUART: "In what light the law views such transactions, remains to be seen. In *Smith* v. *Richards*, 13 Peters, 26, it is, says Judge Barbour, an ancient and well established principle, that whenever a *suppressio veri* occurs, it is sufficient to set aside a conveyance. Judge Story expresses the same thing thus: 'Where a party designedly produces a false impression in order to mislead, entrap, or obtain undue advantage over another —in every such case there is fraud;—an evil act with an evil intent.' 1 Story Eq. Jurisp., 201."

And again: "In cases like this, of numerous and complicated facts, the fraud which should vitiate is generally sought in vain in any one phase of the case. It lurks almost intangibly in the whole transaction. It may be deduced, says Kent, not only from deceptive or false representations, but from facts, incidents and circumstances, which may be trivial in themselves, but decisive evidence in the given case of· a fraudulent design. 2 Kent, 484."

The land is within a short distance of Chicago, and Stirlen went to Baltimore armed with full knowledge of all that related to the title. Appellees had little knowledge of the land or of the title; yet, it is contended by appellants, that appellees were at fault for not better informing themselves before executing the deed, notwithstanding Stirlen's solicitation and representations. The law does not allow the shrewd and designing to thus hide their evil-mindedness behind the ignorance of their victims.

"Where a man professes to possess full knowledge of a fact, and for the fraudulent purpose of inducing another to act makes a statement of fact which is untrue,

and thus misleads the person whom he has induced to act, he is guilty of fraud, although he did not know the statement to be false.'' *Bethell* v. *Bethell,* 92 Ind. 318.

It is also contended that because one of the inducements held out to appellees was that Stirlen would bring suit against Cline on his warranty, and thus recover for appellees what they had paid for the land, therefore the false representations of fact did not induce the making of the deed from appellees, and were consequently not material representations.

''It is true,'' as said in *Bethell* v. *Bethell, supra,* ''that a promise to do a thing in the future is not fraud, although there may be no intention of fulfilling the promise; for fraud consists in the misrepresentation of an existing fact. But in the present case there is more than a failure to make good a promise; there is deceit, misrepresentation, abuse of confidence, and a wrongful preparation of a written instrument, different from that agreed upon. There are facts pleaded showing fraud, and the absence of epithets does the pleading no harm.''

This applies to the case at bar. Because Stirlen's promise was not kept, it does not follow that his other misrepresentations were harmless.

It is claimed that appellees did not act promptly in bringing suit, and that for this reason they must fail. The false representations were made, and the deed executed, in Baltimore, July 17, 1891. The suit was brought September 8, 1891. Under the circumstances, it does not seem that any laches is shown in this. From what has been said of the relations of the parties and the representations upon which appellees relied, it may well be that it would take some time before the suspicions of appellees would be aroused as to the fraudulent character of the transaction. To discover the fraud, to secure counsel, and to institute suit from a distant State,

it would appear that from July 17 to September 8 is not too long a time.

The facts alleged and proved fully show that a tender of the hundred dollars consideration paid to appellees for the deed, was made to appellants before the bringing of this action.

The decision was sustained by sufficient evidence, and was not contrary to law.

The judgment is, therefore, affirmed.

Filed Feb. 21, 1894; petition for rehearing overruled May 11, 1894.