Vermont Marble Co. *v.* Smith *et al.*

No. 1,693.

## VERMONT MARBLE CO. *v.* SMITH ET AL.

FRAUD.—*Partnership.*—*Failure, in Statement to Commercial Agency, to Disclose Individual Liabilities.*—Failure of the members of a firm to disclose their individual liabilities in a statement furnished to a commercial agency, purporting on its face to relate to the financial condition of the firm, and not affirmatively stating that the members had no individual obligations, does not constitute fraud as a matter of law, entitling a seller to rescind a sale to the firm made upon the faith of a report in accordance with the statement.

From the Marion Superior Court.

*N. Morris, L. Newberger* and *J. B. Curtis,* for appellant.

*Florea & Seidensticker,* for appellees.

DAVIS, J.—This was an action in replevin instituted by the appellant, against the appellee, to recover the possession of certain personal property. The answer was a general denial. A trial by a jury resulted in a verdict and judgment in favor of appellees. Appellant's motion for a new trial was overruled and proper exceptions reserved. This ruling is the basis of the only error assigned in this court.

The evidence shows that the appellant, the Vermont Marble Company, was a dealer in marble monuments in the city of Cleveland, and that on February 18, 1893, said company received from the appellees, Smith and Tamm, a letter dated the day previous, in which it is stated that on February 13, 1893, they had bought out the monument business of Fred C. Smith, at 52 and 54 West Georgia street, Indianapolis, and referred plaintiff for reference to R. G. Dun & Co., among others, and asked that said company ship them certain goods on note at ninety days. Appellant wrote, upon the receipt of this letter, to the persons named as references, and

also solicited a report from the commercial agency of R. G. Dun & Co. as to the financial condition of Smith & Tamm. At the request of said agency, and on blank furnished to Smith & Tamm for that purpose, they made out the following report:

### STATEMENT ON A BASIS FOR CREDIT.

*To R. G. Dun & Co.:*

"Concerning the financial condition of Smith & Tamm, of Indianapolis, State of Indiana, as per inventory of February 14, 1893:

#### ASSETS.

| | | |
|---|---|---|
| Merchandise on hand | | $2,835 00 |
| Outstanding, including bills receivable, open accounts, at their realizable value | | |
| Cash on hand and in bank | | 300 00 |
| Total available assets | | $3,135 00 |
| Insurance on stock | | 1,000 00 |

#### LIABILITIES.

| | | |
|---|---|---|
| For merchandise not due | $235 00 | |
| For merchandise past due | * * * | |
| Loans from bank | * * * | |
| Loans from friends or relatives, or any other obligations | * * * | |
| Total liabilities | | 235 00 |
| Surplus in business | | $2,900 00 |
| Estimated yearly extent of business | * * * | |
| Real estate, consisting of (describe and value separately, and in whose name held); August Tamm, Jr., estimated worth | $1,500 00 | |
| Mortgage or other amount unpaid thereon | * * * | |
| Equity in real estate | | 1,500 00 |
| Insurance on buildings | | 400 00 |
| Total estimated worth in and out of business, according to figures | | $4,400 00 |
| Exemptions | | |

SMITH & TAMM,<br>Sign here full name of firm.

By whom signed:
      HARRY C. SMITH,
      AUGUST TAMM, JR.,
          Members of firm.

References: Indiana State Bank, Wm. T. Noble, Albert Sahm.

On or about the day R. G. Dun & Co. received this statement they made a report as to the financial condition of Smith & Tamm, in substance the same as the above statement, to the appellant, who, in reliance on the truth of the facts contained in the statement, then sold and shipped, or caused to be shipped, to said Smith & Tamm the property in controversy.

In the latter part of July, or early in August, 1893, said Smith & Tamm made an assignment to the appellee, George Seidensticker, for the benefit of creditors, from whom the appellant replevied the property sold and delivered to Smith & Tamm in reliance upon the truth of the facts contained in the statement as to their financial condition.

The evidence discloses that about the time of the purchase of the business from Fred C. Smith, the said Harry C. Smith borrowed of his wife $1,350.00, for which he executed to her his note, and that said August Tamm secured $1,500.00 by mortgage on his home, the title to which previous thereto was in himself and wife jointly, and on account of this transaction he executed to his wife his note for $1,000.00, and that said Smith & Tamm then paid $2,700.00 of the money so received by them respectively to said Fred C. Smith on account of such purchase.

The statement, it will be noticed, apparently purports to relate to the financial condition of Smith & Tamm. There appears in the writing no specific inquiry or statement in relation to the individual indebtedness of the members of the firm, unless the words "loans from friends or relatives or any other obligation" should be held to refer to the individual indebtedness of the different members of the firm. It is not claimed that there were any loans or other obligations due from the firm of Smith & Tamm to friends, relatives or other

persons, except the $235.00 for merchandise as disclosed by the statement.

Two questions only are discussed by counsel for appellant :

1.    That the verdict of the jury is not sustained by the evidence and is contrary to law.

2.    That the court erred in charging the jury that the plaintiff could not recover because of false statements made by Smith & Tamm, unless in making them they knew or believed them to be false.

Counsel for appellant contend that the statement by Smith & Tamm, made as the basis for securing credit, operates as a warranty of its truthfulness, and that the right of the seller to rescind the contract cannot be made to depend upon the knowledge of the purchaser of the correctness of the statements made. Further they insist that the statements made by Smith & Tamm to the appellant, through R. G. Dun & Co., were in fact false in a material respect in this, that no reference therein was made to the notes executed by them to their respective wives, and that for this reason the appellant had the right to rescind the contract of sale and recover the goods.   In this connection it should be borne in mind that the evidence clearly shows that when the statement was made Smith & Tamm both knew of the individual indebtedness of each member of the firm to their respective wives.   As it appears without contradiction that Smith & Tamm knew of such individual indebtedness at the time the statement was made, there is, in any view of the case, no available error because of the instruction that the plaintiff could not recover, unless in making the false statements referred to they knew or believed such statements to be false.   Assuming for the purpose of determining the question arising on the instruction that the appellant was entitled to rescind the

Vermont Marble Co. *v.* Smith *et al.*

contract and recover the property, if it appeared that Smith & Tamm had made material false statements as to their individual indebtedness, whether they knew or believed such statements were false or not; yet it is apparent from the record, as above indicated, that the instruction, if erroneous, was harmless for the reason, as before stated, that it is shown without dispute that said Smith & Tamm had full knowledge of their individual indebtedness when the statements were made. Knowledge of the fact of their individual indebtedness at the time the statement was made being conceded by them on the trial, the instruction by the court, if erroneous, that it was incumbent on appellant to prove such knowledge by them, did appellant no injury under the circumstances.

What, however, is the fair and reasonable construction of the written statement? It seems to purport on its face, as we have seen, to be a statement concerning the financial condition of Smith & Tamm, "as per inventory" of February 14, 1893. There is no pretense that the individual obligation of the partners appeared on the "inventory" of the firm. Under the head "assets," what assets are referred to? Evidently, it seems to us, the partnership assets of the firm of Smith & Tamm as shown by the "inventory" made a few days before. Then immediately following, under the head of "liabilities," there appears "for merchandise not due, merchandise past due, loan from bank, loan from friends or relatives, or any other obligations," in each instance, in our opinion, apparently referring to the firm obligations. As we have before observed, there is no specific statement or inquiry relative to the individual assets or liabilities of the different members of the firm. It therefore requires a very liberal construction of the statement in behalf of the appellant to con-

strue it as a warranty or representation that the members of the firm were not indebted in any amount on individual obligations. If the statement, however, should be so construed, it must be conceded that it did not, when made, state the truth. If this construction is to prevail, the statements, or rather the silence as to such individual liabilities, were false and known to be false when made. Assuming, therefore, that the statement was untrue in this, that it failed to disclose the individual obligations of the members of said firm in the sum of $2,350.00, and that the credit was extended to Smith & Tamm, by appellant, on the faith of the truth of the statement, does such false statement authorize the rescission of the contract and the recovery of the property in controversy in this action?

It should be borne in mind that the evidence does not show any intent on the part of Smith & Tamm to defraud the appellant, unless under the circumstances the law implies such fraudulent purpose to them. In this connection we will therefore examine the decision of the supreme court, to which our attention has been called, bearing upon the question under consideration.

*Thompson* v. *Peck*, 115 Ind. 512, was an action in replevin. The theory of the plaintiffs in that case, as we understand it, was that they were entitled to rescind the contract and recover the goods on the ground that the purchasers knew they were insolvent, and that they fraudulently concealed their insolvency and obtained the goods with a design not to pay for them. In that case the purchasers were not charged with having made any material false representation respecting their financial condition, for the purpose of obtaining credit. In the course of the opinion, Judge Mitchell says: "That the purchasers may have been insolvent when the first bill, or any of the other bills, were purchased, and that they

may have known that their debts exceeded their assets, did not of itself constitute such fraud as justified the setting aside the sale after the goods had come fully and fairly into the possession of the buyers.

"To avoid a sale after the goods have been taken into the possession of the buyer, apparently in the ordinary course of his business, there must have been some artifice or trick, or some false pretence, or fraudulent suppression of the truth, which enabled the purchaser to obtain possession of the goods, and it must appear that the latter intended at the time of each purchase not to pay for the goods."

*Gregory* v. *Schoenell*, 55 Ind. 101, was also an action in replevin. The action was prosecuted on the ground that the purchaser obtained the property by fraud in making false representations. In the course of the opinion, Judge Biddle says: "In such a case, to establish fraud and authorize a rescission of the contract for that cause, the representations made must have been such as were calculated to deceive a person of common prudence; they must have been false and known to be false at the time, by the person who made them, and the person to whom they were made must have believed them to be true and relied upon them, and they must have been the inducement which caused him to part with his property."

*Frenzel* v. *Miller*, 37 Ind. 1, was an action on a note, to which the defendant answered by counterclaim, alleging that the note was executed in part consideration for an engine, boiler and machinery, which the plaintiff at the time of the sale falsely and fraudulently represented were in good condition, sound and fit for the purpose for which they were intended, and were in good running order, etc. It was there held that if the plaintiff made the representations charged and the defendants

relying thereon purchased the mill, believing them to be true, and if such representation proved to be false to defendants' damage, then the defendants were entitled to damages on their answer, notwithstanding the plaintiff did not know that what he said was false.    The court quotes with approval the following from Parsons on Contracts:    "If the statement be in fact false and be uttered for a fraudulent purpose, which is in fact accomplished, it has the whole effect of fraud in annulling the contract, although the person uttering the statement did not know it to be false, but believed it to be true."    37 Ind. 12.

*Booher* v. *Goldsborough*, 44 Ind. 490, was an action on a note.    It was averred in the answer, among other things, that the note was executed in part payment of the purchase-price for a steam engine and sawmill, which the plaintiff represented was a number one engine, as good as new, and in no wise injured or damaged; that defendants relied on said representation, and that said representations were false and untrue.    The court held that the answer did not charge fraud.    We quote from the opinion as follows:    "It is not essential to constitute fraud that a person making representation should at the time know that that they were false, but they must be made with a fraudulent intent.    It is sufficient if they are made recklessly, not knowing them to be true, and for the purpose of influencing the other party in making the purchase or contract."

*Kirkpatrick* v. *Reeves*, 121 Ind. 280, was an action to recover damages growing out of the purchase of a jackass, induced by false and fraudulent representations.    The court said:    "An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist and speaks from his own

knowledge. If the fact does not exist and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose. * * * The mere fact that a statement is untrue will not warrant the conclusion that there was fraud."

In *Furnas* v. *Friday,* 102 Ind. 129, the court said: "Although it is true that a complaint seeking a recovery for injuries arising from misrepresentations need not allege that he knew his representations were false, it is necessary that it should state facts showing that they were fraudulent."

In *Roller* v. *Blair,* 96 Ind. 203, the court said: "Where a party professing to have knowledge falsely represents a thing to exist, and makes the representation for the purpose of securing an undue advantage over the person with whom he is contracting, he is guilty of fraud, although it may not appear that he knew his statement was false."

In *West* v. *Wright,* 98 Ind. 335, the court held, that where one professes to have full knowledge of the facts, asserts those facts with the intent and purpose of deceiving and defrauding another, and succeeds in accomplishing that purpose, it is not necessary to show that he knew the representations to be false. See also *Brooks* v. *Riding,* 46 Ind. 15; *Slauter* v. *Favorite,* 107 Ind. 291, 299; *Robinson* v. *Reinhart,* 137 Ind. 674, 681.

We will not undertake to reconcile apparent conflict in some of the authorities cited. Neither is it our purpose to formulate a general rule applicable in such cases. Suffice it to say that in this case there was no unqualified affirmative statement that the members of the firm owed no individual obligations. The false representation, if one was made, consists in failing to dis-

close the fact that such individual indebtedness existed. The appellate court on appeal cannot disturb the verdict of the jury on the evidence on the ground that the failure to make such statement, under the circumstances, was for the fraudulent purpose of obtaining the property in question. We find no available error in the record.

Judgment affirmed.

Filed November 5, 1895.