## McCLELLAN v. TOBIN ET AL.

[No. 27,657. Filed March 5, 1942.]

564

*Paul A. Lennington,* of Muncie, and *Roscoe D. Wheat,* of Portland, for appellant.

Rhoads & Jacobs and Sol Esarey, all of Indianapolis, and Albert Abromson, of Portland, for appellees.

ROLL, J.—This was an action in ejectment commenced by appellant, against appellee Rose B. Tobin, to recover possession of certain real estate located in Muncie, Indiana. The action was venued to the Jay Circuit Court, where appellant filed a second paragraph of complaint to quiet title, making the other appellees party defendants. Appellees Tobin and Beatty answered by a general denial and an affirmative answer; also, they filed a joint and several cross-complaint. The issues were closed by answers of general denial to the affirmative pleadings.

There was a special finding of facts and conclusions of law, made by the court at the request of appellant. Appellant's motion for a new trial was overruled by the court and appellant perfected this appeal assigning as one of the errors the overruling of his motion. By his motion for a new trial, appellant questions the sufficiency of the evidence to sustain the finding and decision of the court, and says that the finding and decision of the court is contrary to law.

Appellee Tobin claims an interest in and to the real estate here in question by virtue of a contract of sale from the Merchants National Bank of Muncie, executed on July 15, 1935. By the terms of this contract, appellee Tobin agreed to pay the bank $7,000 at the rate of $100 per month; title to the property to remain in the seller until the full purchase price was paid. This contract was performed until December 1, 1937, when it was succeeded by a second contract. The purchase price named in the second contract was $7,000, but the monthly payments were increased from $100 to $140 per month. The second contract was, on January 20, 1938, succeeded by a third contract, which was in all

respects similar to the first and second except the purchase price was increased to $7,500 and the monthly payments to $150 per month. The change in the contract was to secure money with which to make repairs to the building located on the real estate.

Appellee Beatty claimed an interest in and to the real estate because he claimed that he was the real purchaser but that he had no money to pay the purchase price, and that he orally agreed with Mrs. Tobin that the contract of sale should be made in her name and that she should hold the contract as security for the money advanced by her in the execution of the contract, and that when he should repay Mrs. Tobin all the money by her expended in carrying out the contract, she would transfer and assign the contract to him. He claimed that he had made some improvements on the property and therefore had an interest in the same.

Appellant claimed title to the property here in question, having purchased from Mrs. Tobin the sales contract on October 19, 1938, and received an assignment from her of said contract on said date, and having paid the balance of the purchase price to the bank and received from the bank a warranty deed for the real estate in question.

Appellees admitted the execution of the assignment by Mrs. Tobin, but seek by their cross-complaint to have the assignment from Mrs. Tobin to appellant set aside and declared void because of fraud practiced by appellant upon appellee Tobin. The fraud relied upon by appellee is charged in the cross-complaint in the following language:

"That he (appellant) then and there informed her that her friend, Beatty, was untrue to her, and while pretending to be her friend, was at the same time obtaining all of her money and property; that he, Beatty, was intimately associated with other

women in said city who were conniving to obtain her money and property and that they would succeed in doing this; that such women were not of good reputation and that he, Beatty, was constantly associating with them and that her reputation in said city of Muncie was being destroyed and that she was being disgraced by reason of her association with such person.

"McClellan advised Mrs. Tobin to sell her interest in said contract immediately and to take the money she could obtain therefor and go back to Indianapolis and remain there permanently and not again visit the said city of Muncie or be associated with said persons in Muncie and that he, said McClellan, could arrange for her to sell her interest and obtain her money to the full extent of her advancements.

"That then and there and for several weeks prior thereto, Mrs. Tobin had been in poor health, nervous and very sensitive; and that the said representations so made to her caused her great agony; that she was not in a condition to resist the intended force and effect of such representations; that she believed the same and acted upon said belief and that she then and there succumbed to the said misrepresentations and at the earnest solicitation of McClellan, she accompanied him to the office of the bank, after banking hours, and that they were admitted thereto upon the special request of said McClellan; that the said McClellan, upon entering said bank, after hours, as aforesaid, requested said bank to prepare an assignment of said contract so existing between the bank and the said Mrs. Tobin, and to provide in said contract for the transfer by Mrs. Tobin to said McClellan; that said bank, in accordance with the said request, did prepare a contract of assignment to be executed by said Mrs. Tobin to said McClellan, and that meanwhile, said bank, at the request of said McClellan, calculated the interest and principal due to said Mrs. Tobin under the conditions which he had detailed to the bank; that thereupon, the bank delivered to her for her signature a contract of assignment, a copy of which is attached hereto, made a part hereof and marked Exhibit 'E'; that pursuant to the request of both McClellan and said bank, she executed said contract and that said

McClellan delivered to her a check or draft in the sum of Fourteen Hundred Sixty-seven Dollars and Thirty-three Cents ($1,467.33) as and for her interest in said property.

"The representations so made by McClellan were false, untrue and were made with the purpose and intent to mislead, deceive and to deprive Mrs. Tobin of her said contract and that she did at the time believe said statements and acted upon them to her damage and injury under the influence of said McClellan and did execute said pretended assignment."

As stated above, the court found the facts specially and stated conclusions of law thereon. The court's finding No. 16 is as follows:

"That the information brought to the defendant and cross-complainant, Rose Tobin, by the plaintiff, William A. McClellan, to the effect that William G. Beatty was attempting to cheat her out of her property and that her reputation was being involved by her association with William G. Beatty, while not believed by said Rose Tobin, the information coming from the source from which it did, that of a member of the Bar, she became confused thereby and said information was influential in causing her to sell and assign her interest in the contract and had said statements not been made to her, she would not have parted with her interest in the property in question."

Appellee Tobin herself testified upon the question of whether the statements made by appellant and charged in the cross-complaint were believed by her and relied upon, and her testimony upon that point was in substance as follows:

At the time I went to Mr. McClellan's office, I knew and trusted Mr. Beatty. I didn't believe Mr. McClellan when he told me that I had conducted myself improperly with Mr. Beatty. I couldn't believe Mr. McClellan when he told me my association with Beatty was getting me talked about, because it wasn't so. I have never been ashamed

of our associations. Mr. McClellan wasn't telling the truth when he made those statements. I didn't believe McClellan at the time he told me that Beatty was going to beat me out of my property. I trusted Mr. Beatty, and always have. I believed he was going to deal fairly with me. I believed at the time that Mr. Beatty was going to deal fairly with me in all respects. It was our intention to marry.

It should be stated here that the court made no finding whatever with reference to the truth or falsity of the alleged false and fraudulent statements made by appellant.

It is well settled by the decisions of this court that a failure to find a fact in favor of a party having the burden of proof is equivalent to a finding against him. *Stumph* v. *Bauer* (1881), 76 Ind. 157; *Ayers* v. *Adams* (1882), 82 Ind. 109; *Hunt* v. *Blanton* (1883), 89 Ind. 38; *Chicago, etc., R. Co.* v. *Ramsey* (1906), 168 Ind. 390, 81 N. E. 79; *State ex rel.* v. *Meiser, Trustee* (1929), 201 Ind. 337, 168 N.E. 185. So in considering the sufficiency of the evidence to support the decision of the court, we must take the findings as though the court had specifically found that the statements made by appellant were true. If the statements made to appellee by appellant were true, there could be no recovery by appellee under her cross-complaint.

"It is fundamental in the law of fraud that in any case, in order that representations may warrant the basis for relief, they must be false. In the absence of creating a false impression deliberately by its use, fraud cannot be predicated upon a representation which is true in fact. A false representation may nevertheless be made by presenting that which is true so as to create an impression which is false, and then profiting by the false impression thus created, for in such case the state of mind produced falsely represents the facts, and to take advantage of such a state of mind is to profit

by a false representation. In order to establish a case of false representation, it is not necessary that something which is false shall have been stated as if it were true, but it is sufficient that a false impression has been produced on the mind of the other party. It is immaterial that no specific statement in a prospectus is false, if the general impression conveyed by it is false." 23 Am. Jur., § 114, p. 896.

This rule was recognized and adopted in our court as early as 1862, in the case of *Jenkins* v. *Long* (1862), 19 Ind. 28, 29. The following excerpt is quoted from that case:

"But, under the code, fraud must be specially pleaded; and the answer of fraud must contain the averments of all the elements necessary to be proved to make a fraud; and they are that the representation must go to a material fact; must be made under such circumstances that the party has a right to rely on it; the party must rely on it, and it must be false to a material extent."

The same rule was announced in *Frenzel* v. *Miller* (1871), 37 Ind. 1. All the cases agree upon this proposition.

Even though representations were false, it is also a fundamental principle of the law of fraud, regardless of the form of relief sought, that in order to secure redress, the party to whom the remarks were addressed, must have relied upon the statements or representations as an inducement to his action or injurious change of position. See 23 Am. Jur. Title Fraud and Deceit, § 141, p. 939, and cases cited.

In *Edwards* v. *Hudson* (1938), 214 Ind. 120, 124, 14 N. E. (2d) 705, in considering this question, the court used the following language:

"Deception, as that term is used in the law of fraud, is something that operates upon the mind

of the victim. When the person who claims to have been defrauded solemnly states under oath that he did not believe the alleged false representations, the inevitable conclusion must be that he was not deceived thereby. There is no other field of inquiry for a court to explore under such circumstances."

Appellee Tobin alleged in her answer and cross-complaint that appellant made certain false and fraudulent representations and that she believed the same, and relied upon them. She sought to rescind her assignment upon the ground of such fraud. The burden of proof of the alleged fraud was upon her. The court, in effect, found that the statements alleged to have been false, were in fact true. In the second place, the court specifically found that the statements were not believed by appellee. These were material facts to be proven by appellee. Appellee has no ground to complain of the result for she testified under oath that she did not believe the statements made by appellant because she knew they were not true.

The facts found must contain all the facts necessary for a recovery. The findings of the court in this case are fatally defective in the two essentials heretofore pointed out and compel a reversal of this case.

Other questions are presented, but under the above facts we think it unnecessary to discuss them in this opinion.

Judgment reversed with instructions to the trial court to sustain appellant's motion for a new trial, and for further proceedings.

NOTE.—Reported in 39 N. E. (2d) 772.