DEAN PLUMLEY, ROSE A. PLUMLEY *v.* ALBERT L. STANELLE, SR., ALBERT L. STANELLE, JR., GLADYS A. STANELLE.

[No. 2-473A102. Filed May 30, 1974.]

*Kenneth M. Waterman, Parker, Hoover & Rousch,* of Fort Wayne, for appellants.

*Alfred H. Plummer III, Plummer Tiede Magley & Metz,* of Wabash, for appellees.

SULLIVAN, P.J.—Plaintiffs-appellants (Plumley) appeal from a negative judgment. Plumley had sought recovery from defendants-appellees (Stanelle) alleging fraud in the sale of business property. Plumley argues that the decision was contrary to the weight of the evidence and contrary to law.

Insofar as Plumley attacks the weight or sufficiency of the evidence, no issue is before us for review. *Graves* v. *City of Muncie* (1970), 255 Ind. 360, 264 N.E.2d 607; *Booher* v. *Alhom, Inc.* (1973), 156 Ind. App. 192, 295 N.E.2d 841.

In circumstances before us, we may reverse a judgment as being contrary to law only where the evidence leads to but

one conclusion and the trial court has reached the contrary conclusion. *Yellow Mfg. Acceptance Corp.* v. *Voss* (1973), 158 Ind. App. 478, 303 N.E.2d 281; *State Farm Life Insurance* v. *Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886. We will not weigh the evidence nor judge the credibility of witnesses, but will look only to the evidence most favorable to the appellee and all reasonable inferences to be drawn therefrom. *Muehlman* v. *Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591; *Houser* v. *Board of Comm'rs. of DeKalb Co.* (1969), 252 Ind. 301, 247 N.E.2d 670; *State Farm Life Insurance* v. *Spidel, supra.*

In so viewing the record, we find the following evidence pertinent to the issue.

Stanelle purchased the Miami Brass Company in the fall of 1965. In early 1966, the foundry was incorporated as Miami Brass Co., Inc., and it began a new fiscal year on April 1, 1966. Thus, the first full calendar year under Stanelle's ownership or management ended December 31, 1966, and the first fiscal year was fiscal 1967, ending March 31, 1967.[1]

On April 26, 1968, Plumley visited Associated Business Brokers in Chicago with the intention of purchasing a business. Associated informed him that they had a listing for Miami Brass. It appears that Plumley had no experience in foundry operations. He was, in fact, a Certified Public Accountant with 20 years experience in accounting.

At Associated Business Brokers, Plumley was shown three documents:

(A) A listing sheet for the Miami Brass Company. In the form spaces "Total Monthly Income", "1966 $159,000" was filled in. "Total Monthly Net" was "1966 $34,000.00."

(B) A balance sheet for the year ending March 31, 1968

---

1. Some confusion arises in this case from the practice by counsel and the witnesses of identifying the fiscal year by the calendar year in which it started, e.g., Plumley refers to the fiscal year from April 1, 1967 to March 31, 1968 as "fiscal 1967".

which revealed Gross Sales of $67,375.30, Gross Profit of $37,736.50, and net profit of $10,424.88.

(C) A letter from Stanelle to Associated Business Brokers stating that "in 1966 the owner realized a profit of $34,000 on sales of $159,000."

Plumley does not question the accuracy of the gross sales figures, nor does he allege confusion arising from the use of annual figures in the monthly spaces on the listing sheet. The primary confusion apparently concerns whether the 1966 figures were for a fiscal or calendar year, and whether the profit of $34,000 was a net or gross amount.

Plumley visited Miami Brass that same day. After talking with Stanelle, he stated that he would return in May to examine tax returns.

On May 7, Plumley returned to Miami Brass and received for his inspection Corporate Tax Returns for the years ending March 31, 1967 and March 31, 1968, Stanelle's personal tax return for calendar year 1966 and Miami's profit and loss sheet for calendar year 1966. These revealed the following figures:[2]

|  |  | Gross Sales | Gross Profit | Net Profit |
|---|---|---|---|---|
| P & L | Jan. '66-Dec. '66 | 158,979.76 | 66,912.81 | 22,983.33 |
| Tax Return | Apr. '66-Mar. '67 | 138,682.38 | 55,866.36 | – |
| Tax Return | Apr. '67-Mar. '68 | 68,250.00 | 34,966.24 | – |

The Profit and Loss Statement establishes that the "1966" figures Plumley had been shown at Business Brokers were for the calendar year 1966, and not the fiscal period which began April 1, 1966. A glance at the declining pattern of the figures reveals the importance of this distinction.

Plumley was offered the opportunity to have his accountant[3] examine the complete books of the corporation, but did not conduct further investigation.

2. The personal return for 1966 revealed "salary" of $6,600 and profit from the business during the quarter in which it was unincorporated of $4,400, but shed no further light on the financial status of Miami Brass.

3. Apparently the personnel at Miami Brass were unaware that Plumley was a CPA.

Plumley resolved to buy the corporation and on May 15, 1968, paid $62,545.00 therefor.

There was testimony that when Plumley took over operation of Miami Brass, he had a negative attitude. He had no technical expertise, lacked the knack of handling people, and was unable to obtain competent help. In September, 1968, after four months of operation, Plumley gave up the business as unprofitable and subsequently began this action on October 14, 1968 by filing a complaint alleging fraud on the part of Stanelle. A first trial was had in 1970, resulting in a judgment for Stanelle. A new trial was subsequently granted and on August 15 and 16, 1972, the case was tried anew by the Court sitting without intervention of a jury.

On October 10, 1972, the trial court returned a finding and judgment for defendants. The finding states in pertinent part:

"The Court further finds upon the evidence for Defendant, Albert L. Stanelle, Sr. and against Plaintiffs, finding that Defendant, Albert L. Stanelle, Sr., did make statements or cause to be published and exhibited to [Plumley] matters concerning his 'income' and such statements and publications relative to monetary income never defined whether such income was gross, net, or taxable income. Further, the Court finds that Defendant interchanged his years of income from that of an annual basis to that of a fiscal basis for the years 1966 and 1967. Without more such statements, publications, and interchanging of annual and fixcal taxable [sic] would entitle Plaintiffs to relief. However, the Court finds that from April 26, 1968 to May 15, 1968, Plaintiff, Dean Plumley, was told and shown, by his own admission, Plaintiffs' [sic] income and tax information, which the Court finds, based upon Plaintiffs' experience as an accountant, is sufficient notice of true facts regarding Defendant's income that he cannot be said to rely upon Defendants' prior statements and publication about his income as a matter of right or fact."

Plumley summarizes his argument on appeal thusly:

"A

The information which 'was told and shown, by his own admission' to Plumley does not amount to constructive

'notice of true facts' such as would preclude him from relying on Stanelle's false statements, which were unknown to Plumley to be false.

### B

Even if there are facts sufficient to give Plumley 'constructive notice,' the doctrine of constructive notice can never be so applied as to prevent a defrauded party from recovering for fraudulent misrepresentations."

We first point out that the trial court did not find that Stanelles' statements were false. What the trial court stated was that the change from annual to fiscal years and the lack of definition as to whether income was gross, net or taxable in the documents shown Plumley at Associated Business Brokers would, without qualifying circumstances, entitle Plumley to relief. As was quoted with approval in *McClellan* v. *Tobin* (1942), 219 Ind. 563, 569-570, 39 N.E.2d 772:

> "A false representation may nevertheless be made by presenting that which is true so as to create an impression which is false, and then profiting by the false impression thus created, for in such case the state of mind produced falsely represents the facts, and to take advantage of such a state of mind is to profit by a false representation." See also *Restatement of Torts,* §§ 527 and 529; *Prosser on Torts* (4th Ed.) § 106.

Thus, the trial court found that, without clarification, the figures received from Associated Business Brokers and later affirmed by Stanelle were sufficiently misleading or ambiguous to allow Plumley to recover. The court, however, states that the corporate and personal tax returns and Profit and Loss Statement shown to Plumley on May 7, when coupled with Plumley's experience as an accountant, was "sufficient notice of true facts regarding Defendant's income that he cannot be said to rely upon Defendant's prior statements and publication about his income as a matter of right or fact."

Plumley construes this as a finding by the court that he had "constructive notice" of the true facts. The finding may not be so characterized.

Constructive notice may exist only by virtue of legal inference. Under the theory of constructive notice, notice is imputed by law to one who does not have actual notice.

There is no inference of law involved in the case at bar. The evidence supports the trial court's finding, i.e., that Plumley either had actual knowledge of the facts contained in the returns and profit and loss statement, or, having had them in his possession, knowledge of the contents is implied as a matter of fact. We must therefore examine what effect such knowledge has on Plumley's claim for relief.

The elements of fraud are misrepresentation of a material fact, scienter, deception, reliance and injury. *See Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119; *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N.E.2d 341, reh. dismissed 167 N.E.2d 882, Tr. denied 241 Ind. 302, 171 N.E.2d 824.

Deception and reliance involve the state of mind of the victim. As such, their existence or absence is a question for the trier of fact. Once resolved, we cannot disturb that finding without a clear showing that it was not supported by the evidence. *Edwards* v. *Hudson* (1938), 214 Ind. 120, 14 N.E.2d 705; *Smart & Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N.E.2d 718.

In the present case, the evidence that Plumley had received the tax forms and profit and loss statement on May 7, was sufficient to establish that he had actual knowledge of the true facts before he purchased Miami Brass, without regard to the ambiguity and/or falsity of the figures previously furnished him.

Where one acts upon representation known by him to be false or misleading, he cannot later secure redress for his actions. Some Indiana courts have reached this result by stating that there was no *deception:*

"Deception, as that term is used in the law of fraud, is something that operates upon the mind of the victim. When the person who claims to have been defrauded solemnly states under oath that he did not believe the alleged false representations, the inevitable conclusion must be that he was not deceived thereby. There is no other field of inquiry for a court to explore, under such circumstances." *Edwards* v. *Hudson, supra,* 214 Ind. at 124; *See also McClellan* v. *Tobin, supra.*

Other decisions have been based on the theory that there was no *reliance,* or that reliance was unjustified. In *Security Trust Co.* v. *O'Hair* (1935), 103 Ind. App. 56, 59-60, 197 N.E. 694, reh. denied 199 N.E. 602, the court said:

"Appellee was a business man of ability, as above disclosed, and had actual knowledge of the poor financial condition of the gravel company . . . yet with all this actual knowledge appellee testified that he relied upon the statements of the president of the bank that the stock of the gravel company, or the par value of $100.00 per share, was worth $400.00 or $500.00 per share and that the assets of that company were worth $60,000.00 to $70,000.00. The belief of such fantastic statements on the part of the appellee indicates that he was not diligent and closed his eyes to existing facts of which he had actual knowledge. There can be no recovery for misrepresentations where the hearer had ample reason to doubt their truth. 12 R.C.L. 372, § 124. *Frenzel* v. *Miller* (1871), 37 Ind. 1, 17; *Manley* v. *Felty* (1896), 146 Ind. 194, 45 N.E. 74. It is clear that appellee had knowledge and notice of the company's poor financial condition and as a business man, having the capacity to contract, knew that the stock of any company in such financial condition could not be worth such amount as the bank president stated. It is incredible that appellee relied on the alleged statements and was induced by them to purchase the stock when he had such actual knowledge of the company's poor financial condition." *See also Bowman* v. *Carithers* (1872), 40 Ind. 90; *First Nat'l. Bank of Elkhart* v. *Osborne* (1897), 18 Ind. App. 442, 48 N.E. 256.

We need not belabor these conceptual intricacies however. Suffice it to say that the determining factor in the case before us is whether Plumley was entitled as a matter of law to rely upon certain representations made by Stanelle in the light of subsequent clarifying information which was pro-

vided to him (Plumley). Appellant's quarrel with the court's findings characterized by Plumley as a determination of "constructive notice" is therefore little more than an obfuscating semantic gambol. Whatever labels, if any, the trial court had in its mind when it reached its determination are of little consequence to our task.

Very simply stated, the trial court was entitled, in view of Plumley's background and experience as a certified public accountant, to conclude that notwithstanding prior representations by Stanelle, subsequent events placed Plumley in position in which he could not be held to reasonably rely upon such representations. Plumley as a CPA was in an advantageous position vis a vis the seller of the business and could not reasonably be argued to have been an unwitting or naive dupe of the seller with respect to the profits and losses of the business and of the income derived therefrom.

Plumley perhaps made an unfortunate investment but under the circumstances he cannot now be heard to complain that the law should extricate him from his folly or from his inability to make the business prosper.

The judgment is not contrary to law and it is hereby affirmed.

Buchanan, J., concurs; White, J., concurs with separate opinion.

## CONCURRING OPINION

WHITE, J.—The trial court made a long, rambling entry as a preface to its judgment. The majority opinion quotes only that part of the entry which contains the *finding* for defendant-appellant Albert L. Stanelle, Sr., upon which the judgment in his favor is based. Both appellants' brief, appellees' brief, and the majority opinion treat that entry as having the effect of a special finding. As the court said in *Lawson* v. *Hilgenberg* (1881), 77 Ind. 221, 222:

"In treating the statement of facts contained in the judgment as equivalent to a special finding, counsel are in error.

The statement of facts in a general finding does not transform it into a special finding."

I find no Indiana case which finds fault with that statement and all seem to follow it. There is not, however, complete agreement as to what effect, if any, should be given to extraneous matter included in the entry of a general finding. The *Lawson* case appears to have disregarded it, but in *Levy* v. *Chittenden* (1889), 120 Ind. 37, 42, 22 N.E. 92, the court reversed a judgment for the plaintiff because "the facts found fail to show a cause of action such as is stated in the complaint, the plaintiff cannot recover." *Levy* added: "A finding which is not in the technical sense of this code a special finding, will not be disregarded because it specifically states the facts found, and is not in general terms a finding for the plaintiff or defendant."

The finding at bar is distinguishable from the *Levy* finding in that it is "in *general terms* a finding for the . . . defendant" with what seems to me to be an explanatory statement added. The finding at bar seems to me to be analogous to that in *Over* v. *Dehne* (1905), 38 Ind. App. 427, 435, 75 N.E. 664, 667, 76 N.E. 883, of which the court said:

"As above indicated, the court made a general finding, in favor of appellee, fixing his damages at $247. The court after announcing its finding for said amount, itemized the damages as follows: $50 for the first fire; $125 for the second fire; and $72 for the depreciation of the rental value of appellee's property. The court was not required to itemize the amount of damages, and in no sense can this itemized statement, as it appears in the record, be considered as a special finding, and it will therefore be treated as a general finding. The several items of damages, as designated by the court, will be considered as mere surplusage. The statement of facts in a general finding does not transform it into a special finding. *Lawson* v. *Hilgenberg* (1881), 77 Ind. 221.

"It is contended by the appellant that the evidence is insufficient to support the special findings as to the amount of damages. Under the rule just stated, it is unnecessary to consider this question further, for two reasons: (1) Because the finding is general, and the amount fixed in the general finding is of controlling influence; . . ."

Here I believe it would be wise to follow *Over* v. *Dehne*, *supra*, and treat everything in the recital as surplusage except the general finding for appellee. To do so obviates the necessity of arguing whether the trial court found that appellant had "actual knowledge" or merely "constructive notice" of the true facts.

The trial court, of course, made no *express* finding either way. What the court found was *"sufficient* notice." That we are now able to read "sufficient notice" as "actual notice", after appellants' counsel has read it as "constructive notice", gives us no license to attribute insincerity to him by calling his argument an "obfuscating semantic gambol".

I would disregard the surplusage in this general finding for the defendant, and would affirm the judgment with an opinion pointing out that the evidence fails to pass the test necessary for reversal of a judgment based on a negative finding. See *Pokraka* v. *Lummus* (1952), 230 Ind. 523, 532, 104 N.E.2d 669.

NOTE.—Reported at 311 N.E.2d 626.