**WOODWARD INSURANCE, INC.,**
**Plaintiff-Appellant,**

v.

**C. M. WHITE, Defendant-Appellee.**

No. 1–1280A372.

Court of Appeals of Indiana,
First District.

Sept. 9, 1981.
Rehearing Denied Oct. 21, 1981.

Edward F. McCrea, McCrea & McCrea, Bloomington, for plaintiff-appellant.

Daniel M. Mills, Barbara Freedman Wand, Andrew C. Mallor & Associates, P. C., Bloomington, for defendant-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Woodward Insurance Co., Inc. appeals from a judgment for C. M. White (White) which found an agreement not to compete to be void and unenforceable and found that White had not breached any duty owed to Woodward or acted in a manner which constituted unfair competition. We affirm.

## STATEMENT OF THE FACTS

Woodward is an independent insurance agency located in Bloomington, Indiana. White is a casualty-property insurance agent and is currently employed by the May Agency in Bloomington, Indiana. White began his career as a casualty-property insurance agent approximately in 1930 with G. B. Woodward Company, a partnership. Later in the 1930's, White purchased fifty shares of stock of the Insurance Premium Acceptance Corporation (Acceptance Corporation), a corporation formed to finance insurance premiums associated with the Woodward agency. Also, he became an officer and director of Acceptance Corporation. In the late 1930's, the G. B. Wood-

ward Company, Inc., was formed upon the dissolution of the G. B. Woodward Company. White was an employee, officer, and director of G. B. Woodward Company, Inc.

In 1959, Acceptance Corporation became Woodward Insurance Company, Inc. (Woodward), and White's stock in Acceptance Corporation was exchanged for stock in Woodward. Woodward also took over the insurance business from G. B. Woodward Company, Inc. In addition to the stock which he received from Woodward in exchange for his Acceptance Corporation stock, White purchased another fifty shares of Woodward stock for seventy-five dollars per share. On December 30, 1959, White signed an "offer to purchase stock of corporation and agreement not to compete in business" with regard to the fifty shares of stock he purchased. This stock purchase offer, which was drafted by Woodward representatives and is the subject of the instant litigation, contained the following covenant not to compete:

"As an express inducement for the corporation to sell me said shares of capital stock and as additional consideration for the purchase of such capital stock, I do now by the execution of this instrument expressly covenant and agree with the corporation as follows:

"1. In the event that my continued or future connection with Woodward Insurance, Inc., its successors or assigns, either as an officer, director or employee, is terminated for any cause or reason whatsoever subsequent to the execution of this instrument, I agree that I will not engage directly or indirectly in the insurance business or any of its lines, either as agent, broker, solicitor or employee, or as an officer, director, employee or stockholder of any corporation which may now or hereafter be engaged in the local agency insurance business in Monroe County, Indiana.

"2. I do further covenant and agree that I will not loan any money or extend any credit to any person, firm or corporation engaged in the insurance agency or insurance brokerage business and doing business in Monroe County, Indiana, at

any time subsequent to the termination of my employment with Woodward Insurance, Inc. and its successors or assigns.

"3. The above and foregoing covenants and agreements made by me shall remain in full force and effect for a period of five (5) years immediately following the date of the termination of my employment with Woodward Agency, Inc., its successors or assigns. It is expressly understood, however, that following the expiration of such five (5) year period I shall be free to do all or any of the above and foregoing things without restriction.

"4. The terms and provisions hereof shall pertain only to my engagement in the local agency insurance business, either directly or indirectly as hereinabove set forth, within the territorial limits of Monroe County, Indiana, and shall not be applicable to my engagement in such business subsequent to the termination of my employment with Woodward Agency, Inc., its successors or assigns, in any other county in the State of Indiana, or in any other state or territory of the United States."

On September 21, 1979, White tendered his resignation, which was effective October 5, 1979, as an employee, officer, and director of Woodward. He subsequently offered to sell his stock in Woodward back to the corporation, and Woodward purchased it. On October 7, 1979, White negotiated a work agreement with the May Agency and began his employment with that insurance agency on October 8.

Woodward brought this action seeking damages and the enforcement of the covenant not to compete under Count I and damages as a result of alleged unfair competition under Count II. The trial court granted White's motion for summary judgment on Count I, finding the agreement not to compete lacked consideration, was not ancillary to and necessary for the main purpose of the contract, and that the terms of the agreement expired upon White's relinquishing his shareholder status. After the presentation of evidence on Count II,

the trial court entered judgment in favor of White finding that customer lists, expiration dates, premium amounts, and other information relating to policies do not constitute trade secrets; that Woodward failed to show that White breached any duty owed to Woodward; and that Woodward failed to show that any of White's acts constituted unfair competition with Woodward.

## ISSUES

Woodward raises the following issues, which we have restated, for our consideration:

1. Whether the trial court erred in granting White's motion for summary judgment as to Count I of the amended complaint.

2. Whether the trial court erred in finding that White did not engage in unfair competition with Woodward.

## DISCUSSION AND DECISION

*Issue One*

■■■ Woodward contends the trial court erred in granting summary judgment for White. Under Ind.Rules of Procedure, Trial Rule 56(C), summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kendrick Memorial Hospital, Inc. v. Totten*, (1980) Ind.App., 408 N.E.2d 130. In order to determine whether a genuine issue of material fact exists, all materials on file will be construed liberally in favor of the non-moving party and all doubts resolved against the moving party. *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154. Since summary judgment may not be used as a substitute for trial in determining factual issues, the trial court may not weigh conflicting evidence. *Suyemasa v. Myers*, (1981) Ind.App., 420 N.E.2d 1334; *Collins v. Dunifon*, (1975) 163 Ind. App. 201, 323 N.E.2d 264. Furthermore, summary judgment should not be granted if conflicting inferences arise from the facts. *Clayton v. Penn Central Transportation Co.*, (1978) Ind.App., 376 N.E.2d 524.

However, even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. *Hayes v. Second National Bank of Richmond*, (1978) Ind. App., 375 N.E.2d 647, *trans. denied.* Woodward asserts there are material issues of fact as to whether the covenant not to compete was supported by consideration, was ancillary to and necessary for the main purpose of the contract, and whether it expired upon White's relinquishment of his shareholder status. Since the trial court was correct in granting summary judgment because the covenant not to compete was not ancillary to and necessary for the main purpose of the contract, we will not discuss whether the covenant was supported by consideration or whether it expired when White sold his stock.

■■■ A contract or covenant not to compete is generally considered to be in restraint of trade and hence is not favored. *Captain & Co. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159. Such a contract or covenant will be enforced if it is reasonable, is ancillary to the main purpose of a lawful contract, and is necessary to protect the covenantee in the enjoyment of the legitimate benefits of the contract or to protect the covenantee from the dangers of unjust use of those benefits by the covenantor. *Milgram v. Milgram*, (1938) 105 Ind.App. 57, 12 N.E.2d 394. If the restraint imposed by the covenant or contract exceeds the necessity presented by the main purpose of the covenant or contract, then it is void because it oppresses the covenantor without any corresponding benefit to the covenantee and tends to a monopoly. *Id.*

■■■ Woodward argues the covenant in the present case meets the ancillarity requirement set forth in *Milgram v. Milgram*, *supra*, because it is ancillary and necessary to a valid employment contract. We recognize that covenants not to compete have been held sufficiently ancillary and necessary when contained in valid employment contracts. *See Buanno v. Weinraub*, (1948) 226 Ind. 557, 81 N.E.2d 600; *4408, Inc. v.*

*Losure,* (1978) Ind.App., 373 N.E.2d 899. However, as White has correctly stated, the covenant not to compete was not contained in an employment contract in the present case. The written contract dealt with the terms of a stock purchase offer; it did not contain any provisions dealing with the terms of White's employment. Despite this fact, Woodward argues the covenant was "ancillary to the main purpose of the contract because that main purpose was establishing the corporation and establishing a relationship between it and its employees." Appellant's Brief at 25. In essence, Woodward is asking us to interject an employment contract into a stock purchase offer because the purchaser was an employee. This we will not do. As previously discussed, the written agreement did not contain any provisions dealing with White's employment. Neither are there any facts in the record which show the covenant was ancillary to an employment contract.

Not only must a covenant not to compete be ancillary to the main purpose of a valid contract, but it must also be " 'necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of unjust use of those fruits by the other party.' (emphasis deleted)." *Milgram v. Milgram,* 105 Ind.App. at 60, 12 N.E.2d 394. Such a covenant has been found necessary to protect the covenantee when it is ancillary to an employment contract or a contract for the sale of a business. *Buanno v. Weinraub, supra; 4408, Inc. v. Losure, supra; Bennett v. Carmichael Produce Co.,* (1917) 64 Ind.App. 341, 115 N.E. 793. A covenant not to compete in an employment contract is considered to be ancillary to, and necessary for, the main purpose of the contract because the employee will acquire certain knowledge about the employer's business and personal contact with customers which, if used unjustly, would be detrimental to the employer. Similarly, when the covenant is contained in a contract for the sale of a business, it is considered necessary for the buyer's enjoyment of his part of the bargain, especially the goodwill of the business. Without a covenant not to compete,

the seller of a business could recognize his benefit of the bargain—the purchase price—and then establish a competing business not only because of his general knowledge of the business, but also because of his specific knowledge of his former business and his personal contact with his former customers. Thus, the seller has the substantial capability of depriving the buyer of the "legitimate fruits" of the sale contract. However, no such possibility exists between a shareholder and the corporation. The shareholder does not have personal contacts with the customers of the corporation. Neither is the shareholder privy to such detailed information about the business and its customers as a trusted employee would be. Woodward has made no showing on appeal that the covenant not to compete was necessary for the stock purchase agreement in this case. The trial court correctly granted White's motion for summary judgment.

*Issue Two*

Before discussing the merits of this issue, we note that Woodward is appealing from a negative judgment. Hence, we will not reverse the trial court judgment unless it is contrary to law. In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee and reverse the judgment only if the evidence leads but to one conclusion and the trial court reached an opposite conclusion. *Captain & Co. v. Towne,* (1980) Ind.App., 404 N.E.2d 1159; *Plumley v. Stanelle,* (1974) 160 Ind.App. 271, 311 N.E.2d 626.

The trial court concluded that Woodward's customer information was not protectable as a trade secret or confidential information, and hence, White breached no duty owed to Woodward or did any act which constituted unfair competition. Woodward challenges this conclusion contending the customer information which White gained while employed by Woodward did constitute a trade secret or confidential information, and White's use of this information constituted unfair competition.

When an employee is not bound by a covenant not to compete, it is generally recognized that the employee has the right to compete with his former employer. *Community Counselling Service, Inc. v. Reilly*, (4th Cir. 1963) 317 F.2d 239; *Safeway Stores v. Wilcox*, (10th Cir. 1955) 220 F.2d 661; *Republic Systems & Programming, Inc. v. Computer Assistance, Inc.*, (D.Conn.1970) 322 F.Supp. 619, *aff'd*, (2nd Cir. 1971) 440 F.2d 996. However, the employee may not use trade secrets or other confidential information acquired in the course of his employment for his benefit or that of a competitor in a manner which is detrimental to his former employer. *Westervelt v. National Paper & Supply Co.*, (1900) 154 Ind. 673, 57 N.E. 552; *In re Uniservices, Inc.*, (7th Cir. 1975) 517 F.2d 492; *Community Counselling Service, Inc. v. Reilly, supra; Republic Systems & Programming, Inc. v. Computer Assistance, Inc., supra.* Woodward argues that its customer information was a protectable interest as either a trade secret or confidential information and cites us to *Miller v. Ortman*, (1956) 235 Ind. 641, 136 N.E.2d 17 and *4408, Inc. v. Losure*, (1978) Ind.App., 373 N.E.2d 899, as being controlling on this issue.

Although both cases recognize that customer information is a protectable interest, neither is germane to the issue of whether Woodward's customer information constituted a trade secret or confidential information. The statement of our supreme court in *Miller v. Ortman, supra*, which Woodward cites to us, enunciated the general principle that the goodwill of a business, which includes confidential customer information, is a protectable interest by contract or against a conspiracy to appropriate it by unlawful acts. Neither situation is involved in the present case. There is no valid contract not to compete, there is no allegation of a conspiracy, and absent a showing that White appropriated a trade secret, there were no unlawful acts.

The case of *4408, Inc. v. Losure, supra*, also does not advance Woodward's argument. Indeed, it serves to underscore the fallacy of Woodward's citation of these cases to bolster his argument that the customer information was a "protectable interest" for he has failed to distinguish between the manners in which such information is protectable, *i. e.*, as a trade secret or under a covenant not to compete. For instance, although *4408, Inc.* did involve customer information, this information was found to be protectable by a covenant not to compete, not under the theory of a trade secret or confidential information. Thus neither case cited by Woodward is dispositive of the issue of whether Woodward's customer information, *i. e.*, the names of its customers, the type of policies purchased by the customers, and the expiration dates of the policies, constituted a trade secret or confidential information.

Whether customer information constitutes a trade secret or confidential information depends upon the facts of each individual case. Several different factors have been used by courts to determine whether customer lists or customer information constitutes a trade secret. (*See* Annot., 28 A.L.R.3d 7 (1969) for a comprehensive discussion of this issue.) These factors include: (1) the extent to which the information is known outside of the business and the ease or difficulty with which the acquired information could be properly acquired by others, *see Van Products Co. v. General Welding & Fabricating Co.*, (1965) 419 Pa. 248, 213 A.2d 769; (2) whether the information was confidential or secret, *see In re Uniservices, Inc., supra; Town & Country House & Homes Service, Inc. v. Evans*, (1963) 150 Conn. 314, 189 A.2d 390; *Mathews Paint Co. v. Seaside Paint & Lacquer Co.*, (1957) 148 Cal.App.2d 168, 306 P.2d 113; (3) the extent and manner in which the employer guarded the secrecy of the information, *see Go-Van Consolidators, Inc. v. Piggy Bank Shippers, Inc.*, (1973) 111 R.I. 697, 306 A.2d 164; and (4) the former employee's knowledge of customer's buying habits and other customer data and whether this information is known by the employer's competitors; *see, Mathews Paint Co. v. Seaside Paint & Lacquer Co., supra.* Upon application of these factors, some courts

have found customer lists did not constitute trade secrets, *see Knudsen Corp. v. Ever-Fresh Foods, Inc.,* (C.D.Calif.1971) 336 F.Supp. 241; *Republic Systems & Programming, Inc. v. Computer Assistance, Inc., supra; Holiday Food Co. v. Munroe,* (1981) 37 Conn.Supp. 546, 426 A.2d 814; *Jewett-Gorrie Insurance Agency v. Visser,* (1975) 12 Wash.App. 707, 531 P.2d 817; *American Welding & Engineering Co. v. Luebke,* (1968) 37 Wisc.2d 697, 155 N.W.2d 576; *DiAngeles v. Scauzillo,* (1934) 287 Mass. 291, 191 N.E. 426, while other courts have found them to constitute trade secrets, *see Alexander & Alexander, Inc. v. Drayton,* (E.D. Penn.1974) 378 F.Supp. 824, aff'd, (3rd Cir. 1974) 505 F.2d 729; *State Farm Mutual Automobile Insurance Co. v. Dempster,* (1959) 174 Cal.App.2d 418, 344 P.2d 821; *Morgan's Home Equipment Corp. v. Martucci,* (1957) 390 Pa. 618, 136 A.2d 838.

■ In the present case, the information which is alleged to be confidential included not only the names of customers, but also the insurance policy coverage, cost, and expiration dates. The trial court found that this information was not secret or confidential; that it was available to competitors from other sources, especially the customers of Woodward; that Woodward did not have an established policy which impressed upon its employees the alleged confidentiality of the information; and that Woodward disclosed this information to its competitors in certain situations. In light of these facts, we cannot say that the trial court erred in holding that Woodward's customer information was neither a trade secret nor confidential.

■ Woodward contends the trial court erred in concluding its customer information was not confidential and cites us to the testimony of Scott Mahan that Woodward took measures to keep this information confidential. We disagree. The record contains conflicting testimony on this point, and we remind Woodward that on appeal we will not reweigh the testimony. Neither may we substitute our judgment for that of the trial court simply because we might have reached an opposite result had we

been the trier of fact. *Hogan Transfer & Storage Corp. v. Waymire,* (1980) Ind.App., 399 N.E.2d 779, *trans. denied.* Having found that the trial court did not err, the judgment is affirmed.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.