**CLAYSBURG II TOWERS, Plaintiff,**

v.

**BENCHMARK CLAYSBURG, et al., Defendants.**

No. 5:95 CV 075.

United States District Court, N.D. Ohio, Eastern Division.

Oct. 30, 1996.

Daniel P. Mascaro, Michael Kevin Farrell, Mark R. Koberna, Cleveland, OH, for plaintiff.

M. Neal Rains, Susan V. Belanger, Cleveland, OH, for defendants.

## ORDER

NUGENT, District Judge.

Pursuant to the Memorandum and Opinion filed simultaneously herewith, this Court holds that there is no genuine issue as to any material fact and that Defendants are entitled to summary judgment in their favor as a matter of law pursuant to FED.R.CIV.P. 56(c). Therefore, the Motion of Defendants for Summary Judgment (Doc. # 9) is GRANTED.

In addition, Defendant's Amended Request for Relief in Pending Motion for Summary Judgment (Doc. # 42) is DENIED.

Accordingly, this matter is DISMISSED in its entirety.

IT IS SO ORDERED.

## MEMORANDUM OF OPINION

This case is before the Court upon the Motion of Defendants for Summary Judgment on Plaintiff's Complaint (Doc. # 9). Plaintiff has filed its response to Defendants' motion and Defendants' have filed their reply. Plaintiff has filed a surreply brief to Defendants' motion. On June 14, 1996, this Court conducted an oral argument on Defendants' motion. Thereafter, on July 8, 1996, with leave of Court, Defendants filed their Amended Request for Relief in Pending Motion for Summary Judgment. (Doc. # 42). Plaintiff has responded to Defendants' Amended Request Motion. Therefore, the matter is now fully briefed and ripe for disposition by the Court.

## I.

Plaintiff, Claysburg II Towers (hereinafter "Plaintiff"), is a limited partnership with its principal place of business in Canton, Ohio. Defendant, Benchmark Properties, is a Delaware corporation with its principal place of business in Amherst, New York. Plaintiff filed this Complaint on January 11, 1995, setting forth three claims against Defendants, Benchmark Claysburg II Towers Associates Limited Partnership, Benchmark Jeffersonville Properties, Inc. and Benchmark Financial Group, Inc. (collectively referred to hereinafter as "Benchmark"). Plaintiff claims that Benchmark committed fraud and breached a Real Estate Purchase and Sale Agreement as well as a Housing Assistance Payments (HAP) Purchase Agreement when it refused to consummate a real estate purchase transaction with Plaintiff.

## A.

The facts of the present case, taken from the disclosures, exhibits and affidavits attached to the briefs of the parties, are as follows:

During 1993, the parties began to negotiate about the possibility of Benchmark purchasing a Section 8 apartment complex owned by Plaintiff located in Jeffersonville, Indiana. On August 15, 1994, the parties entered into a written Real Estate Purchase and Sale Agreement (hereinafter "Real Estate Agreement") and HAP Purchase Agreement. Pursuant to the Real Estate Agreement, Benchmark agreed to purchase the premises from Plaintiff for $989,000. In addition, under the terms of the HAP Purchase Agreement, Benchmark agreed to purchase from Plaintiff, for the sum of $1,566,000, all of Plaintiff's right, title and interest in a HAP Contract for the dwelling units located on the Premises. The closing date for these two Agreements was scheduled for January 31, 1995.

The Real Estate Agreement provided for the purchase of the apartment complex "upon the following terms and conditions."

(See Pl.Mot.Ex.A). Paragraph 5 of Real Estate Agreement stated, in pertinent part, as follows:

> For a period of sixty (60) days ... Purchaser, at its sole cost and expense, shall employ engineers to inspect the Premises, conduct surveys, tests, studies, soils/environmental/hazardous waste studies and termite and pest infestation studies thereon as may be necessary or required in determining that the Improvements and any related and necessary improvements have been built in a good and workmanlike manner and that the Premises and Improvements thereon are in all respects satisfactory to the Purchaser, in its sole discretion. Purchaser shall have the right at its expense, within the same period to inspect the Premises and the records to satisfy itself that the physical condition of the Premises and the leases, certificates and permits, utilities, inventory, access, easements and books and records (including but not limited to audited financials) for the years 1991, 1992, and 1993 is, in its sole judgment, acceptable to it. It is specifically understood and agreed that, within said period, Purchaser may approve or disapprove of the Premises for any reason whatsoever, including but not limited to the condition thereof and the existence of asbestos thereon. Purchaser agrees to notify in writing the Seller of Purchaser's approval or disapproval of the Premises within said period. If Purchaser has not notified Seller of its approval or disapproval within said period, the Purchaser shall be deemed to have approved the Premises.

Throughout the period of negotiations between the parties, Benchmark conducted several inspections and believed the premises were in excellent condition. On September 28, 1994, Mr. David Fedak, the Director of Acquisitions for Benchmark, contacted Mr. Gerald Gulling, Plaintiff's representative. Mr. Fedak requested permission to have additional representatives of Benchmark inspect the premises. The representatives inspected the premises on or about October 6, 1994.

On December 9, 1994, Benchmark notified Plaintiff of its disapproval of the Premises.

In a letter, Mr. Fedak expressed Benchmark's reasons as follows:

> "Although there were several reasons, one of the main reasons was the new pending legislation before the House and Senate regarding heavy cash flowing Section 8 properties.
>
> \* \* \* \* \* \*
>
> Since you only have approximately five (5) years to go on your Section 8 contract, it will be difficult to achieve an acceptable return on the cash we would have invested in this transaction."

Shortly after receiving the December 9, 1994 correspondence, this lawsuit commenced.

### B.

Benchmark has moved this Court for summary judgment on the grounds that its disapproval of the premises was consistent with the plain, unambiguous language of the Agreement. Benchmark contends that its refusal to accept the premises was a contractual right. Furthermore, Benchmark moves this Court for an order finding that it was within its contractual rights when it terminated the Agreement with Plaintiff. As such, Benchmark would be entitled to a return of its earnest money.

On the contrary, Plaintiff contends that summary judgment should not be granted for several reasons. First, Plaintiff claims that the purported reasons for disapproval set forth by Benchmark in the December 9, 1994, letter were pre-textual and did not set forth any disapproval of the "premises." Second, Plaintiff maintains that the reasons set forth by Benchmark are not sufficient reasons for disapproval pursuant to Paragraph 5 of the Real Estate Agreement. Plaintiff sets forth the affidavit of Mr. Gulling to show that on several occasions Benchmark told Claysburg that it had no reason to disapprove of the Premises. It is Plaintiff's contention that this evidence precludes summary judgment in favor of Benchmark because it creates a genuine issue of material fact as to the reasons for Benchmark backing out of the deal.

## II.

In determining whether summary judgment is to be granted, the court must consider only that evidence which is properly before it. Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)).

The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir.1995). The text of FED.R.CIV.P. 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.

The district judge, in considering this type of motion, is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2509. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

"... the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## III.

As a preliminary matter, this Court notes that the parties dispute in the present matter is governed by Indiana law pursuant to the choice of law clause in the Real Estate Agreement (see ¶ 28) and the HAP contract (see ¶ 23). Although the parties are an Ohio

and a Delaware corporation, the parties and this Court agree that their selection of Indiana law within the Agreement's choice of law provision will be enforced in this diversity action. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Electric Power Bd. of Chattanooga v. Monsanto Co.,* 879 F.2d 1368, 1375 (6th Cir.1989); cert. denied, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990).

## A.

■ Plaintiff's claim rests upon its assertion that Benchmark committed fraud by knowingly entering into the Real Estate Agreement without ever intending to fulfill the terms of that agreement. In an effort to prove this assertion, Plaintiff has presented the affidavit of Gerald Gulling. In his affidavit, Mr. Gulling states that during the negotiations Benchmark "repeatedly assured [him] that it intended to purchase the property and that it was negotiating in good faith." (Gulling Aff. ¶ 3). In addition, Mr. Gulling states that he discovered that Benchmark "had a reputation for entering into purchase agreements for real estate and then later attempting to renegotiate the price under the pretense that it found something wrong with the property." (Gulling Aff. ¶ 4). Even construing these statements in a light most favorable toward Plaintiff this Court finds that summary judgment in favor of Benchmark is appropriate upon all of Plaintiff's claims.

## i.

■ Under Indiana law clear and unambiguous contract terms are conclusive upon the parties and the court. *Uzelac & Assoc., Inc. v. Guzik,* 663 N.E.2d 238 (1996). The contract language in the present case clearly states that the "[p]urchaser may approve or disapprove of the Premises *for any reason whatsoever, including but not limited to* the condition thereof and the existence of asbestos thereon." (see ¶ 5 *supra*, Emphasis added). Plaintiff contends that Benchmark's "right to terminate was limited to its disapproval of the actual, physical real estate ... [and] was not entitled to terminate the agreement for reasons that had nothing to do with the inspections of the Premises or the Prem-

ises itself, such as Benchmark's concern regarding the possible impact of potential congressional legislation. (See, Pl.'s Memo. in Opp. p. 9).

Giving the language in the contract its clear and unambiguous meaning, this Court finds that "any reason whatsoever" is plain and unambiguous. Under the terms of the Agreement, Benchmark was not obligated to spell out any of the reasons for its disapproval of the Premises. In fact, its only obligation under the plain terms set forth in the Agreement was to "notify in writing the Seller" of its disapproval. Moreover, Plaintiff's argument that Benchmark could only terminate the Agreement for disapproval of the actual, physical real estate is also an improper reading of the Agreement. The Agreement clearly states that the inspection by Benchmark shall be done of the Premises *and* the records to satisfy itself that the "leases, certificates and permits ... and books and records ... is, *in [Benchmark's] sole judgment,* acceptable to it." Giving these terms their plain meaning, it is clear that the parties contracted for Benchmark to be able to terminate the Agreement *for any reason whatsoever* during the inspection period. Therefore, under a plain reading of the Agreement, Plaintiff's assertion that the inspection only pertained to the physical Premises is not supported by the plain language of the Agreement.

Plaintiff contends that Benchmark "knew from the outset" that it was not negotiating in good faith and that it would ultimately renege on the Agreement with Plaintiff. Plaintiff contends that Benchmark made false representations in order to induce Plaintiff to deal exclusively with Benchmark. Plaintiff contends that Benchmark mischaracterizes the purported misrepresentations as promises of future performance. Plaintiff contends that Benchmark's statements were actually misrepresentations of past and existing facts.

■ Generally, fraud consists of misrepresentation of a material fact, scienter, deception, reliance and injury. *Jenkins v. Nebo Properties, Inc.,* 439 N.E.2d 686 (Ind. App.1982). The essential elements of actual fraud are a material representation of past or

existing facts, which representations are false, made with knowledge or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying. *Maynard v. 84 Lumber Co.,* 657 N.E.2d 406, 409 (Ind.App. 1995).

For the purposes of this opinion, the Court will assume that Plaintiff can prove three of the elements required in *Jenkins, supra;* scienter, deception and injury. However, under the terms of the Agreement it is impossible for Plaintiff to prove the remaining two elements; misrepresentation of a material fact and reliance. Even assuming that all of the statements attributed by Plaintiff to Benchmark were made, this Court finds that Plaintiff has not set forth a claim for fraud.

■ Fraud cannot be predicated upon acts which by law a party has a right to do, nor upon the nonperformance of acts which by law he is not bound to do. *Colonial National Bank v. Bredenkamp,* 151 Ind.App. 366, 279 N.E.2d 845 (1972); *First National Bank of New Castle v. Acra,* 462 N.E.2d 1345, 1348 (Ind.App.1984). Under the plain terms of the Agreement, the premises could be rejected "for any reason whatsoever." According to these terms, prior to the actual acceptance of the premises Benchmark was able to avoid the Agreement at any time, for any reason.

Therefore, prior to the actual acceptance by Benchmark, Plaintiff had no legally enforceable reason to rely upon any statement made by Benchmark. Just as Benchmark could walk away from the Agreement for seemingly tangible reasons (i.e., leaking roofs, faulty foundation, improper bookkeeping) so too could it walk away from the Agreement for intangible reasons (i.e., "for any reason whatsoever"). Albeit a harsh result, the clear and unambiguous language of the Agreement grants Benchmark this unparalleled latitude in accepting or rejecting the actual acceptance of the premises.

In its brief before this Court, Plaintiff suggests that Mr. Gulling was wary of entering into an agreement with Benchmark because it was his belief that it was Benchmark's *modus operandi* to back out of agreements at the last minute and then renegotiate a lower price. Therefore, to assuage his concerns, Mr. Gulling asked for Benchmark's assurance that they would not attempt such actions with the Plaintiff. Plaintiff contends that Benchmark's assurances amounted to fraud. As stated in *Plumley v. Stanelle,* 160 Ind.App. 271, 311 N.E.2d 626, 630 (1974) "[w]here one acts upon representation known by him to be false or misleading, he cannot later secure redress for his actions." The *Plumley* court went on to state, *Id.,* 311 N.E.2d at 630:

> Some Indiana courts have reached this result by stating that there was no deception: 'Deception, as that term is used in the law of fraud, is something that operates upon the mind of the victim. When the person who claims to have been defrauded solemnly states under oath that he did not believe the alleged false representations, the inevitable conclusion must be that he was not deceived thereby. There is no other field of inquiry for a court to explore, under such circumstances.' (Citations omitted).

In the present case, the evidence shows that Mr. Gulling had concerns over the possibility of Benchmark pulling out of the deal at the last minute. However, despite these concerns Plaintiff entered into an agreement that allowed Benchmark to pull out of the Agreement "for any reason whatsoever."

Thus, the acceptance of the Agreement by Plaintiff as written precludes it from arguing that Benchmark made misrepresentations regarding their intentions to accept the premises. Mr. Gulling appears to be sophisticated in real estate operations and transactions. It is difficult to imagine how he could now claim to have been defrauded by statements made by a party, such as Benchmark, that Plaintiff granted the contractual right to back out of an agreement "for any reason whatsoever."

In short, this Court finds that, as a matter of law, the Agreement gave Benchmark the contractual right to reject the premises "for any reason whatsoever." Therefore, the rejection by Benchmark was within Benchmark's rights under the Agreement.

Defendants' Motion for Summary Judgment (Doc. # 9) is GRANTED.

**B.**

In addition, Defendant's Amended Request for Relief in Pending Motion for Summary Judgment (Doc. # 42) is DENIED.

Accordingly, this matter is hereby DISMISSED in its entirety.

IT IS SO ORDERED.