E. Martin TUTWILER, III, and Ed Tutwiler Cadillac, Inc., Appellants (Defendants Below),

v.

Tim SNODGRASS, Appellee (Plaintiff Below).

No. 2–1080A357.

Court of Appeals of Indiana, Second District.

Dec. 9, 1981.

---

LeRoy A. Freiherr, Rider, Freiherr & Rawley, James A. Strain, Barnes, Hickam, Pantzer & Boyd, Indianapolis, for appellants.

Robert A. Smith and Judith T. Kirtland, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellee.

SULLIVAN, Judge.

E. Martin Tutwiler III (Tutwiler) and Ed Tutwiler Cadillac Inc. (Tutwiler Cadillac) appeal from a judgment against them in an action for fraud brought by Tim Snodgrass, a former employee of Tutwiler Cadillac. The jury entered a verdict against the appellants for $1,660 in actual damages and $150,000 in punitive damages. Pursuant to the trial court's remittitur order, Snodgrass elected to remit $75,000 of the punitive damages award.

Appellants present three issues for review:

I. Whether Snodgrass failed to establish one or more of the essential elements of actionable fraud;

II. Whether the evidence was sufficient to support any award of punitive damages; and

III. Whether an award of $75,000 in punitive damages was excessive.

Snodgrass also submits two contentions for our consideration in the event appellants prevail on the issues they present:

I. Whether the trial court erred in dismissing Count II of Snodgrass's amended Complaint, which alleged negligent misrepresentation; and

II. Whether the trial court erroneously instructed the jury on the measure of damages.

Because we affirm the trial court's judgment, we do not reach the issues presented by Snodgrass.

## I. ELEMENTS OF FRAUD

Viewed in the light most favorable to Snodgrass, the evidence reveals the following: Tutwiler Cadillac is an Indiana corporation based in Indianapolis, engaged in the business of selling new and used cars. Tutwiler is its general manager. Tutwiler Cadillac's used car department was managed by John Lund from approximately November 1977 through May 1978. In June of 1978 Lund left to take another position, and Tutwiler contacted Tim Snodgrass about managing the used car department. Snodgrass at that time was Assistant Used Car Manager at Dave McIntyre Chevrolet in Indianapolis. Snodgrass testified that he was making about $35,000 a year when he left McIntyre Chevrolet.

Tutwiler and Snodgrass met and discussed Snodgrass's background and qualifications for the position of Used Car Manager, the compensation formula for the position, and the financial history of Tutwiler Cadillac's used car department. In this conversation, Tutwiler told Snodgrass that John Lund had "turned it (the department) around" and that it was "making money." He explained that the compensation would be a $300 salary per week plus a bonus of 10% of the net profit computed monthly.[1] Tutwiler represented to Snodgrass that based on what Lund had done in the past, the compensation formula yielded an annual compensation of $25,000 to $30,000.

At trial, it was established through Tutwiler's testimony that Lund actually did not have a profitable tenure with Tutwiler Cadillac; rather, the used car department had a net loss for the period, and in five months out of seven a loss was sustained. Tutwiler testified that at the time he represented to

Snodgrass that the compensation formula applied to the used car department's record during Lund's tenure would yield annual compensation of $25,000 to $30,000, Tutwiler had in fact never applied the formula to Lund's performance, and that he did not know how much gain or loss the used car department had generated under Lund's management.

Snodgrass accepted the job of Used Car Manager at Tutwiler Cadillac and began working there around June 12, 1978. In June 1978, the used car department sustained a loss of $8,762.00, and in July 1978, a loss of $5,313.00. Although Snodgrass was not entitled to any bonus for these months under the compensation formula, on July 15, 1978, he requested, and later received, a $1,000 bonus from Tutwiler Cadillac, in addition to his weekly base salary of $300.

Snodgrass testified that in July 1978 he asked Tutwiler for the profit/loss records for the used car department during Lund's tenure, but Tutwiler never produced them. He also testified that after learning of the loss sustained by the department in June, Snodgrass prepared and submitted to Tutwiler a proposal for an altered compensation formula which Tutwiler rejected. In late July 1978, Snodgrass gave Tutwiler thirty days notice that he might leave the job if they could not work things out. On August 15 Tutwiler met with Snodgrass and requested his resignation.

On September 19, 1978, Snodgrass filed a complaint against Tutwiler and Tutwiler Cadillac alleging fraudulent misrepresentation, fraud, negligent misrepresentation, and equitable estoppel. By reason of subsequent amendments and rulings, trial was had on the fraud count only.

The basis for Snodgrass's claim of fraud is that Tutwiler, while negotiating Snodgrass's employment terms, misrepresented the financial history of the used car department.

---

1. There was a dispute as to whether the bonus was to be computed less $1,000 profit, but the

parties agree we need not resolve this question.

■ The essential elements of actionable fraud are: a material misrepresentation of past or existing fact, which representation is false, and made with knowledge or reckless ignorance of the falsity, and which causes reliance upon such representations to the detriment of the person so relying. *Carrell v. Ellingwood* (1st Dist. 1981) Ind. App., 423 N.E.2d 630, 635; *Rhoda v. Northern Indiana Public Service Co.* (3d Dist. 1976) 171 Ind.App. 401, 357 N.E.2d 287. Appellants argue that the evidence did not support any of these essential elements. In order to obtain reversal, they must demonstrate that as a matter of law, one or more essential elements was not established. *Physician's Mutual Ins. Co. v. Savage* (1st Dist. 1973) 156 Ind.App. 283, 296 N.E.2d 165.

### A.  Material Misrepresentation of Past or Existing Fact

Appellants contend that the crux of Snodgrass's claim is that Tutwiler "misrepresented" what Snodgrass "would have made" under the proposed salary arrangement, if Snodgrass performed as well as his immediate predecessor, John Lund. Appellants contend that this claim, and the evidence supporting it, were insufficient to permit recovery for fraud because they fail to establish that Tutwiler made any representations as to a past or existing fact. Appellants claim that any statements made by Tutwiler were statements of prediction, rather than fact.

■ It is true that an action for fraud must be predicated on statements regarding past or existing facts rather than predictions or promises to be performed in the future. *Middelkamp v. Hanewich* (1970) 147 Ind.App. 561, 263 N.E.2d 189; citing *Smith v. Parker* (1897) 148 Ind. 127, 45 N.E. 770. However, we agree with Snodgrass that his claim of fraud is not based upon any predictions or promises by Tutwiler as to what Snodgrass could expect to earn as used car manager. Rather it is based on alleged misrepresentations regarding the used car department's financial state at the time of the conversation between Snodgrass

and Tutwiler, and before and during Lund's employment, which are past and existing facts. Even if Tutwiler, at the time he made the representations, was not aware of the extent of losses of the used car department, the general rule in Indiana is that that which is susceptible of exact knowledge when made is generally considered to be a statement of fact. *Smart & Perry Ford Sales, Inc. v. Weaver* (1971) 149 Ind. App. 693, 697; 274 N.E.2d 718, 721. As Tutwiler himself testified, monthly profit and loss statements for the used car department were prepared and given to him. The jury could reasonably have concluded that the financial history of the used car department was an ascertainable fact which was the basis for the misrepresentation. Furthermore, Snodgrass may recover for damages resulting from his reliance on misrepresentations as to financial history even if such misrepresentations were mixed with promises regarding future income. Where the representation was a material inducement to action, recovery may be had despite the fact that the claimant relied in part upon other representations of the speaker which were not actionable in themselves because of their promissory character. *Robinson v. Reinhart* (1894) 137 Ind. 674, 36 N.E. 519. We find that there was sufficient evidence from which the jury could conclude that Tutwiler made representations regarding past or existing facts.

### B.  Falsity

■ The representations upon which an action for fraud are predicated must be false. Appellants argue that any representation Tutwiler may have made to Snodgrass concerning the financial history and condition of the used car department were truthful; that Lund had indeed "turned around" the department and it was "making money." To support this argument, they point to the fact that Lund's greatest loss ($20,974) occurred during his first month of management, he reduced this loss by nearly 80% in one month, after his second month he incurred no loss as great as $3,000. However, when Lund's record is

compared with that of his predecessors, the profit/loss figures reveal that his performance yielded substantially similar results; it could hardly be said that he "turned around" the department. The jury could have reasonably concluded that by reason of Tutwiler's intimate familiarity with used car sales and particularly the sales of his own corporation, his statement about "turning the business around" was a statement of ascertainable fact rather than mere sales puffing or opinion. *Smart & Perry Ford Sales, Inc. v. Weaver, supra.*

Even if Tutwiler's statement that the department had been "turned around" by Lund be considered as a mere subjective opinion rather than a statement of ascertainable fact, his other misrepresentations were of existing fact. Those misrepresentations, of themselves were sufficient to engender reliance by Snodgrass and provide a cause of action in fraud.

Furthermore, Lund's record standing alone reveals that the used car department at Tutwiler Cadillac was not a money making operation in June 1978 as Tutwiler represented it to be. Under Lund's management, the department sustained an overall loss of more than $5,000 and only two of the seven months of his tenure were profitable. May 1978, the month immediately preceding Tutwiler and Snodgrass's initial conversation, had been a losing month. Appellants have failed to show that Tutwiler's representations concerning the financial state of the used car department were, as a matter of law, truthful.

### C. Scienter

■ Appellants next argue that the scienter necessary to sustain an action for fraud was not supported by the evidence. An essential element of actionable fraud is that the alleged misrepresentation was known to be false or made recklessly. *Ayers v. Moore* (1948) 118 Ind.App. 289, 78 N.E.2d 463. *Automobile Underwriters, Inc. v. Rich* (1944) 222 Ind. 384, 53 N.E.2d 775. We conclude that there was sufficient evidence to support a finding that Tutwiler's statements concerning the used car depart-

ment were *at least* recklessly, if not intentionally made.

Tutwiler testified that in his capacity as general manager of Tutwiler Cadillac he received monthly profit and loss statements from each department, and that he discussed these reports with his father. From this evidence, the jury could reasonably have concluded that Tutwiler knew or should have known that the used car department under Lund was not a profitable operation.

Snodgrass testified that he was contacted by Tutwiler and offered the position. Both men testified that Tutwiler would not have been able to hire Snodgrass as used car manager for the $300 weekly base salary alone. The jury could have inferred from this that Tutwiler intentionally misrepresented the department's financial condition or that he acted recklessly in making inaccurate statements which could easily have been confirmed in order to obtain the employ of Snodgrass.

### D. Reliance

■ As appellants correctly contend, to recover in fraud a plaintiff must prove reliance. Such reliance must be reasonable and may not be predicated upon matters of subjective future intent or probability. *Fairwood Bluffs Conservancy District v. Imel* (1970) 146 Ind.App. 352, 255 N.E.2d 674. Appellants argue that the crux of Snodgrass's fraud claim involves reliance upon predictions and promises, not past or existing facts. We have rejected appellants' argument that there was insufficient evidence that Tutwiler misrepresented past or existing facts, and found that Snodgrass's fraud claim is based upon misrepresentations concerning the past and then existing financial condition of the used car department. Snodgrass's testimony that he believed Tutwiler and expected to earn $25,000 to $30,000 as used car manager, along with the fact that he left a position earning $35,000 to come to Tutwiler Cadillac, is sufficient to show that he relied upon those representations and was reasonable in doing so.

### E. Damages

■ Next, appellants claim that Snodgrass in two respects failed to establish the injury necessary for actionable fraud. They first argue that the evidence did not establish injury in fact because there was no evidence that the amount Snodgrass received was less than the value of his services, and second, that any damage Snodgrass may have shown was not proximately caused by Tutwiler's alleged misrepresentation.

Appellants' first argument is without force. Snodgrass did not seek compensation for the value of his services, he sought damages suffered because of his reliance on Tutwiler's misrepresentations. The trial court instructed the jury on the issue of damages without objection by appellants. Instruction # 10 read, in pertinent part, as follows:

"If you find for the plaintiff on the question of liability, you then must determine the amount of money which will fairly compensate him for those elements of damage which were proved by the evidence to have resulted from the fraud or wrongful conduct of the defendants. You may consider the difference in the income plaintiff would have received if the representations of the defendants had been true and the amount actually paid to the plaintiff by the defendant ED TUTWILER CADILLAC, INC. during the time plaintiff was employed by the defendant."

The instruction is not an improper statement of the law applicable to these facts. *Williamson v. Brandenberg* (1892) 133 Ind. 594, 32 N.E. 834; *Peoples State Bank of Indianapolis v. Hall* (1925) 83 Ind.App. 385, 148 N.E. 486; see Restatement, *Torts* (2nd Ed.) § 549(2).

According to the measure of damages covered by this instruction, Snodgrass was not required to prove that his services were worth more than he was paid, but rather that he was paid less than he would have been had the misrepresentations been true.

The appellants' second argument concerning damages must also fail. The cases appellants cite as authority for the proposition that "even if Snodgrass had been able to show some injury in fact, Indiana cases establish that, as a matter of law, any such injury was not proximately caused by defendants," are not on point. These cases merely hold that proof of legally cognizable damages is necessary to recover in fraud. *Miller Jewelry Co. v. Dickson* (1942) 111 Ind.App. 676, 42 N.E.2d 398; *McNaught v. McNaught* (1921) 77 Ind.App. 171, 133 N.E. 402.

## II. PROPRIETY OF PUNITIVE DAMAGES

Appellants argue that the evidence does not support any award of punitive damages because Snodgrass failed to establish intentional and malicious conduct as required by Indiana law.

Without objection by defendants, the trial court gave the following final instructions to the jury:

"If you find by a fair preponderance of the evidence presented that there was fraud or malicious or oppressive conduct on the part of the defendants and that the public interest would be served by deterring such conduct, you may, in addition to compensatory damages, award punitive damages to the plaintiff in an amount reasonably designed to deter such conduct by defendants in the future.

\*     \*     \*     \*     \*     \*

Punitive damages are damages allowed as a punishment for an offense and to deter others from like offenses or misconduct. There is no absolute right to punitive damages although in a proper case they may be awarded in addition to actual damages. Punitive damages may be awarded when a wrongful act is willfully done in an abusive, wanton or oppressive manner in disregard to rights of others."

In *City of Gary v. Archer* (3d Dist. 1973) 157 Ind.App. 477, 300 N.E.2d 687, the appellant attempted to raise for the first time in its Motion to Correct Errors the issue of whether assessment of a punitive damages

award against a municipality was against public policy. Appellant had not objected to any of the three instructions relating to punitive damages given by the trial court. The Third District of this Court held that the issue of punitive damages had been waived by appellant's failure to make a timely objection during trial.

■ Appellants cite *Meridian Mutual Insurance Co. v. McMullen* (1st Dist. 1972) 152 Ind.App. 141, 282 N.E.2d 558 for the proposition that by making a motion for judgment on the evidence they have preserved the alleged error with regard to plaintiff's entitlement to any punitive damages. For two reasons appellants fail. First they did not renew the motion for judgment on the evidence at the conclusion of all the evidence. Thus any alleged error in overruling the motion made at the conclusion of plaintiff's case was waived. *Smith v. Insurance Co. of North America* (4th Dist. 1980) Ind.App., 411 N.E.2d 638.

Furthermore unlike the *McMullen* case, the motion for judgment on the evidence here did not request that the issue of punitive damages be withdrawn from the jury. A recent case, *State v. Totty* (1st Dist. 1981) Ind.App., 423 N.E.2d 637 is similar to the *McMullen* case in this regard and is likewise distinguished.

Because they failed to object, appellants may not now successfully urge that the jury could not apply these instructions to the facts before them.

■ Even were the issue preserved, we would conclude that the evidence was sufficient to support an award of punitive damages. Punitive damages may be awarded in addition to compensatory damages "whenever the elements of *fraud*, malice, gross negligence, or oppression mingle in the controversy." (Emphasis supplied.) *Art Hill Ford, Inc. v. Callender* (1981) Ind., 423 N.E.2d 601, 602, quoting *Hibschman Pontiac v. Batchelor* (1977) 266 Ind. 310, 362 N.E.2d 845; *Taber v. Hutson* (1854) 5 Ind. 322.

### III. EXCESSIVENESS OF PUNITIVE DAMAGES

Appellants argue that even if the evidence supports a punitive damages award, $75,000 was an excessive amount. First, they argue that the only Indiana decisions which have permitted punitive damage awards of such magnitude were expressly based on evidence of the defendants' extremely high profits or earnings. *See Indiana & Michigan Electric Company v. Stevenson* (1st Dist. 1977) 173 Ind.App. 329, 363 N.E.2d 1254 (punitive awards against major utility of $50,000 to one plaintiff and $60,000 to another, where compensatory damages were $120 and $300 respectively, upheld on evidence that Defendant had assets of $1.5 billion, profits of $43,924,000 and had paid dividends of $40,320,000 the previous year); *Joseph Schlitz Brewing Co. v. Central Beverage Co.* (1st Dist. 1977) 172 Ind.App. 81, 359 N.E.2d 566 ($50,000 award allowed against "second largest brewer in the United States" whose "profits total annually in the millions of dollars." *Id.* at 105, 359 N.E.2d at 581). Tutwiler and Tutwiler Cadillac argue that no evidence of such large earnings was or could have been introduced here.

■ A punitive damages award rests within the sound discretion of the trier of fact once it has been determined that there is legal basis upon which to premise the award. For us to vacate an award as excessive, it must clearly appear to have been the result of passion or prejudice. *Schlitz Brewing Co., supra.* To determine if the award was the result of passion or prejudice, it is necessary to consider the purpose of awarding punitive damages, which is to punish the wrongdoer and deter others from similar conduct in the future. *Id.* Thus, the amount of punitive damages should depend upon the nature of the wrong and what amount is likely to impact upon the particular defendants and prevent others from future similar wrongdoing.

Appellants contend that there was insufficient evidence to make this determination because no evidence of Tutwiler Cadillac's

net profits or earnings was offered.[2] We know of no rule requiring evidence of a defendant's net profits to support a punitive damages award. Our Supreme Court in *Hibschman Pontiac, supra,* noted that where punitive damages are to be assessed, the wealth of the defendant *may* be shown so that damages are assessed in an amount that will deter him. The Court said:

> "Such a rule is based on the theory that it will take a greater amount of penalty to dissuade a rich person than a poor person from oppressive conduct. However, there appears to be no requirement that evidence of worth be submitted in cases of punitive damages." 266 Ind. at 317, 362 N.E.2d at 849.

■ Furthermore, evidence was introduced through Tutwiler's testimony that Tutwiler Cadillac had a net worth of about eight million dollars and gross receipts of about twenty-four million dollars in 1978. We conclude that this was sufficient evidence of Tutwiler Cadillac's profit status from which the jury could assess punitive damages.[3] *See Nate v. Galloway* (3d Dist. 1980) Ind.App., 408 N.E.2d 1317, in which the Court held that sufficient evidence of economic wealth was presented in defendant's testimony that he owned three apartment buildings and had been a landlord for sixteen years.

■ Appellants additionally assert that the only Indiana cases supporting such a large award of punitive damages as was assessed here were against much larger entities than Tutwiler Cadillac. We cannot substitute our judgment for that of the trial court unless "at first blush (the punitive damages) appear to be outrageous and excessive or it is apparent that some improper element was taken into account by the jury in determining amount." *Hibsch-*

man Pontiac, supra, 266 Ind. at 318, 362 N.E.2d at 849, quoting *City of Indianapolis v. Stokes* (1914) 182 Ind. 31, 105 N.E. 477. Considering the evidence presented, we cannot say the award was excessive.

Appellants' final argument is that the punitive damages are excessive when considered in relation to the size of the compensatory award. There is no rule in Indiana which requires that punitive damages bear a certain ratio to compensatory damages. *Hibschman Pontiac, supra; Nate v. Galloway, supra.*

Judgment affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.

---

**2.** To the extent this argument is based upon the premise that the purpose of punitive damages is to hurt the defendant and deter other wrongdoers, we note that it is imperative to consider what it takes to distress a particular defendant. Thus an award of joint and several damages against joint defendants, as here, could seem to subvert this basic premise, and, if raised in a proper case, Indiana law might require apportionment of damages severally between defendants. We need not, however, decide that issue.

**3.** The absence of evidence concerning Tutwiler's individual and personal financial status does not dictate a contrary conclusion for as observed in footnote 2 appellants have not argued that joint and several damages are improper.