**Richard Allen SMITH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1285S522.

Supreme Court of Indiana.

Dec. 20, 1988.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Richard Allen Smith tried to return a razor at Danner's. The store would not take it because he did not have a receipt. As a result, he is serving 32 years in prison.

Smith was convicted of attempted theft, a class D felony. Ind.Code §§ 35-43-4-2(a), 35-41-5-1 (Burns 1985 Repl.). The trial court sentenced Smith to two years for the conviction, and enhanced the sentence by 30 years because Smith was a habitual offender. Ind.Code § 35-50-2-8 (Burns 1985 Repl.).

On November 21, 1978,[1] Smith sought a refund for a Remington XLR 3000 electric razor at three different stores, a Hook's in Mooresville, a Hook's in Martinsville, and finally a Danner's Discount Department store. Employees from the Hook's stores testified that the razor presented to them had a Hook's price tag on the carton. Both Hook's stores denied Smith a refund because of a store policy requiring a receipt before any refund may be given. The razor carton that Smith presented at Danner's did not have a price tag on it, but it had a marred area where a price tag may have been removed.

Suspicious of Smith, Hook's employees alerted Danner's of Smith's attempt to obtain a refund for a Remington razor.

Hence, when Smith tried to obtain a refund at Danner's, Danner's employees notified police and stalled Smith until police arrived. Danner's would have refused Smith a refund because of its own no-receipt, no-refund policy.

■ In this direct appeal, Smith raises four issues. The dispositive issue is whether the evidence was sufficient to sustain Smith's conviction for attempted theft. In reviewing for sufficiency, we may not reweigh the evidence nor judge the credibility of witnesses. We will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. If we determine, however, that a reasonable person could not have drawn the essential inferences from the evidence presented, then the evidence is insufficient as a matter of law. Under such circumstances it is our duty to reverse the judgment. *Lottie v. State* (1974), 262 Ind. 124, 311 N.E.2d 800.

This is not a simple shoplifting case where the defendant was captured with merchandise underneath his shirt upon exiting the store. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036. Rather, this is a case where the prosecution posits in the charging information that the defendant *lawfully* possessed the razor.

■ The State asserts that Smith attempted "to exert unauthorized control" over Danner's profit margin by creating the false impression that the razor was previously purchased at Danner's.[2] The conventional proof of the element of "unauthorized control" is to show a taking from the victim. In this context, however, "unauthorized control" can be proven by showing that Smith created a false impression. Ind.Code § 35-43-4-1(b)(4) (Burns 1985 Repl.). To demonstrate that Smith sought to create a false impression, the State must show that Smith did *not* previously pur-

---

1. This appeal was delayed because the defendant left the courtroom during a recess at his sentencing, and did not return to custody for more than four years.

2. In light of our analysis, we do not reach the issue of whether a profit margin may be property under Indiana's theft statute. Ind.Code §§ 35-43-4-2(a), 35-41-1-23.

chase the razor at Danner's. The charging information asserts that "in fact the razor had been purchased at Hook's Drug Store, Bloomington, Indiana." The burden to prove this fact lies with the prosecution. *See Coburn v. State* (1984), Ind.App., 461 N.E.2d 1154; *Comer v. State* (1981), Ind. App., 417 N.E.2d 1180, 1183–1184.[3] Without that crucial element of proof, every citizen engaging in a simple refund transaction would risk criminal penalties. Some citizens such as those seeking to return gifts simply do not know where the item was originally purchased.

The prosecution attempts to reach the conclusion that the razor presented at Hook's was the same razor Smith presented at Danner's, minus a Hook's price tag. If this conclusion is proven, then a reasonable inference may be drawn that the razor Smith presented at Danner's was purchased at Hook's; and, therefore, Smith was attempting to create a false impression at Danner's.

There would be two ways to draw such an inference: 1) a Hook's employee could identify the razor recovered from Smith at Danner's as the same razor Smith presented at Hook's, or 2) the marred area found on the razor presented at Danner's might correspond with the removal of a Hook's price tag. Both of those methods fail.

The pertinent evidence on this subject is as follows.

Robert Atherton, assistant manager and pharmacist at the Hook's in Mooresville, testified that the razor carton presented to him had a Hook's price tag on it. Margaret Edwards, a certified pharmacist's secretary at the Hook's in Martinsville, testified that the razor carton presented to her had a Hook's price tag on it. She also testified that a Hook's label is a gummed-back label and "it can be taken off without anything showing on the package." Edwards further stated that Hook's tags do not leave a mark when they are removed. On cross-examination, she refined her answer by saying that removal of a Hook's price tag

may discolor a package. Then, during the same cross-examination on this issue of what kind of mark would be left by removal of a Hook's price tag, she stated: "I don't really know."

Donna Jo Stafford, a service desk clerk at Danner's, testified that Smith filled out a refund form at Danner's. Stafford testified that there was no price tag on the razor carton presented to her. Janelle Tedrow, another Danner's employee working at the service desk, testified that no price tag was on the razor carton presented to her at Danner's. She further stated: "There had been some type of sticker because there is some labelling missing—not labelling, some of the packaging is gone off the box...." She said the type of price sticker Danner's used on razors would be very difficult to remove. She stated that removal of a Danner's price tag would have left a mark on the razor package.

None of the Hook's employees could identify the razor presented at trial (which was the one police took from Smith at Danner's) as the same razor that Smith presented at Hook's. Moreover, the only witness to describe the kind of mark the removal of a Hook's price tag would leave, gave contradictory testimony on that issue; and, finally, stated that she did not know what kind of mark, if any, would be left.

■ If there is no proof that the razor was *not* previously purchased at Danner's (or purchased at a Hook's in Bloomington as charged in the information, a claim on which there is no testimony whatsoever), there is absolutely no reasonable way to infer that Smith was attempting to create a false impression. From the evidence presented, it is unreasonable to infer that the razor Smith presented at Danner's was *not* previously purchased at Danner's. Without that inference, the prosecution fails to prove that Smith attempted to exert unauthorized control of Danner's profit margin by creating a false impression. Therefore, the evidence presented is insufficient as a matter of law.

---

3. To assert, as the State's brief does, that there is sufficient evidence because there is *no* evidence that the razor has been purchased from a Dan-

ner's store is incorrect. That would improperly place the burden of proof on the defendant. *Hill v. State* (1937), 212 Ind. 692, 11 N.E.2d 141.

This burden of proof upon the prosecution is a difficult one, especially where most products are exact replicas; but we are mindful that the exchange of merchandise and the attempt to exchange merchandise are frequent occurrences in our society. To decrease the burden upon the state would increase the danger of lost liberty to innocent citizens.

We reverse the conviction and order Smith discharged.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents with separate opinion.

PIVARNIK, Justice, dissenting.

It seems to me the facts here remove this case from comparison with "citizens exchanging merchandise as common practice." It appears there were facts from which the trier of fact could infer proof of elements of the crime charged; I dissent and would affirm.