**ARLINGTON STATE BANK, Appellant–Defendant,**

v.

**Glen R. COLVIN and Carolyn Sue Colvin, Appellees–Plaintiffs.**

**No. 24A01–8901–CV–28.**

Court of Appeals of Indiana, First District.

Oct. 23, 1989.

Rehearing Denied Nov. 22, 1989.

Thomas A. Withrow, Jeffery J. Neal, Henderson, Daily, Withrow & DeVoe, Indianapolis, David P. Barrett, Brookville, for appellant-defendant.

J. Lee McNeely, Mark W. McNeely, Stephen E. Schrumpf, McNeely, Sanders, Stephenson & Thopy, Shelbyville, for appellees-plaintiffs.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Arlington State Bank appeals from a judgment awarding Glen R. Colvin and Carolyn Sue Colvin $35,000 compensatory damages and $100,000 punitive damages because of the Arlington State Bank's Breach of an Agreed Judgment between the bank and the Colvins. We affirm, but reduce the amount of damages.

## FACTS

On or about May 4, 1984, Arlington State Bank (Bank) initiated a lawsuit against Glen R. and Carolyn Sue Colvin (the Colvins) to foreclose upon the mortgage which the Bank held upon the property. On March 26, 1985, the Bank and the Colvins entered into an Agreed Judgment, whereby the Colvins quitclaimed to the Bank their interest in the property and the Bank agreed to lease it to the Colvins for a period of up to one year beginning March 1, 1985. The Bank also granted the Col-

vins a right of first refusal to purchase the property during the lease period.

In April 1985, the Bank entered into a listing agreement with a local realtor to sell the property. A real estate agent with the realtor was working with the Colvins to help them locate a larger home. She asked the Colvins whether they were interested in purchasing the property. The Colvins responded that the home was too small. The realtor, interpreting this remark to mean that the Colvins were not interested in purchasing the property, informed Ron Wilson (Wilson), the Bank's attorney, that the Colvins were not interested in purchasing the property.

Mr. and Mrs. Sorenson (the Sorensons) made a purchase offer to the Bank in November 1985. Wilson advised the Bank's Board of Directors that the realtor had informed him the Colvins were not interested in purchasing the property. The Bank then accepted the Sorenson's purchase offer on November 18, 1985, without offering the Colvins the right of first refusal. James A. Evans (Evans), the Bank's Chief Executive Officer, signed the purchase agreement, which referenced the leasehold interest owned by the Colvins. Wilson prepared a warranty deed which Evans executed, and the sale was made on November 22, 1985, subject to the Colvin's leasehold.

The real estate agent had informed the Colvins in November 1985, that an offer had been made to purchase the property. On December 2, 1985, the Colvins, through their attorney, Rick Levi (Levi), told the Bank they were interested in purchasing the property. Also on December 2, 1985, Wilson advised the Colvins that they had two days to match the cash offer of $33,900 which the Sorensons had made on the property. Levi told Wilson that the Colvins were offering to match the Sorensons' purchase offer pursuant to their right of first refusal, but needed more than two days to obtain financing. Wilson advised Levi that an offer had been made on the property which had to be accepted by the Bank within two days. Wilson did not tell Levi that the property had already been sold. Later that day, the realtor called Levi and told him that the property had been sold on November 22, 1985.

On December 3, 1985, the Colvins tendered to the Bank a written offer to purchase the property for $33,900.00. The Colvins' attorney had advised them to do this in order to protect their record for future litigation. The Colvins did not tender any cash. On December 3, 1985, the Colvins had $16,000.00 on deposit in the bank for use as a down payment. The Colvins submitted a residential loan application to the Rushville National Bank on the same day. Rushville National Bank told the Colvins that it would take between seven (7) and ten (10) days to get an appraisal of the property and to process a loan application. For various reasons the Rushville National Bank neither granted nor denied the Colvins' loan application.

The Colvins initiated this lawsuit on December 6, 1985, against the Bank, also naming the Sorensons as co-defendants. The Sorensons filed a cross-claim against the Bank for the Bank's failure to transfer merchantable title to the property. The Bank settled its suit with the Sorensons in October 1986, for $40,169.29 and the Sorensons conveyed title to the Bank. The Colvins' suit against the Bank went to jury trial. At both the conclusion of the Colvins' case-in-chief and the conclusion of the presentation of all the evidence, the Bank moved for judgment on the evidence on the issues of compensatory and punitive damages. The Bank alleged that the Colvins had failed to introduce any evidence of actual damages suffered as a result of the Bank's failure to adhere to the terms of the agreed judgment, and that the Colvins had failed to introduce clear and convincing evidence that the Bank's conduct associated with its failure to adhere to the terms of the agreed judgment was so reprehensible as to justify an award of punitive damages. The trial court denied both motions. The jury found in favor of the Colvins, awarding them $35,000 in compensatory damages and $100,000 in punitive damages, and the court entered judgment. Further facts will be revealed as necessary to the discussion.

## ISSUES

Arlington State Bank presents thirteen issues for appeal which we consolidate and renumber as follows:

1. Did the trial court err in denying the Bank's motions for judgment on the evidence made on the basis that the Colvins had failed to present substantial evidence to support a compensatory damage award of $35,000 and, if the court did not err, was the award clearly excessive?

2. Did the trial court err in denying the Bank's motions for judgment on the evidence made on the basis that the Colvins failed to establish by clear and convincing evidence that a punitive damage award of $100,000 was justified and, if the court did not err, was the award clearly excessive?

## DISCUSSION AND DECISION

### Issue One

The Bank asserts that the Colvins failed to present substantial evidence which would support the jury's award of $35,000 in compensatory damages. The Bank also asserts that the trial court's denial of the Bank's motions for judgment on the evidence, made at the close of the Colvin's case-in-chief and again at the close of all the evidence, was erroneous. Specifically, the Bank alleges that the Colvins failed to introduce any evidence of actual pecuniary damages, of physical injury accompanying mental anguish, or of intentional conduct by the Bank inspired by fraud or malice and causing mental anguish to the Colvins.

Both parties acknowledge the fact that the Bank breached the agreed judgment is not in dispute. Only the issues of whether damages should be paid and what amount of damages should be paid are in dispute.[1]

When we review the sufficiency of the evidence brought forth at trial, we will not reweigh it and we will not determine the credibility of witnesses. We will consider only the evidence most favorable to the appellee together with all reasonable and logical inferences to be drawn from the evidence. If there is substantial evidence of probative value to support the trial court's judgment, we will affirm it. *Smith v. State* (1988), Ind., 531 N.E.2d 1162, 1163. A jury's verdict will be set aside only if there is a total lack of evidence or where it is contrary to uncontradicted evidence. *Trinity Lutheran Church v. Miller* (1983), Ind.App., 451 N.E.2d 1099, 1102, *trans. denied.*

In order to determine the proper measure of damages to which the trial evidence must be compared, we must note the nature of the right which was breached. The right of first refusal was merely a dormant set of rights that did not entitle the Colvins to take any action until the Bank received a bona fide offer to purchase. *See Urban Hotel v. Main and Washington Joint Venture* (1986), Ind.App., 494 N.E.2d 334, *trans. denied* and *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545. If the Bank had notified the Colvins that it had received a purchase offer from the Sorensons, the right of first refusal would have been changed into an option. *See Urban Hotel*, 494 N.E.2d at 337. "By an option, the owner subjects himself to the liability of having to convey the property if the option is exercised within the time and in the manner stipulated." (Emphasis omitted). *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1127, *trans. denied.*

No measure of damages for a breach of a right of first refusal was stated in *Urban Hotel*. However, in *Stoneburner* we dealt with the issue of damages for breach of a pre-emptive right, which is another label for a right of first refusal. *See Urban Hotel*, 494 N.E.2d at 336, n. 1. The general measure of damages for a vendor's failure or refusal to convey land is usually based on the difference between the contract price and the market value of the land at the time of the breach, plus the return of any payment made with interest.

---

1. For this reason, the question of whether the Colvins had the financial ability to match the Sorensons' offer in November or December of 1985 does not arise. We cannot speculate as to what the outcome of the situation might have been if the Bank had provided the Colvins their right of first refusal.

Such a measure is referred to as loss of the bargain. *Stoneburner*, 408 N.E.2d at 551. The price voluntarily paid by a purchaser is admissible as evidence of the property's fair market value. *Indiana Tri–City Plaza Bowl v. Estate of Glueck* (1981), Ind. App., 422 N.E.2d 670, 679, *trans. denied.* The fair market value at the time of the breach is the particular fair market value to be compared to the contract price. 25 I.L.E. *Sales of Realty* § 158 (1960).

At trial the Colvins presented evidence that the fair market value of the property was $33,900 by showing that the Sorensons paid that purchase price in November 1985. That figure also represented the contract price since it was the amount which the Colvins would have had to match if the Bank had not breached the right of first refusal clause of the agreed judgment. Thus, the market value and the contract price of the property were the same. Although the Colvins attempted to present evidence at trial and on appeal that the fair market value of the property was $40,-169.29, the record establishes that was the amount paid by the Bank to the Sorensons in October 1986, eleven months after the Bank had breached the agreed judgment. The record also establishes that the Bank's payment to the Sorensons was in settlement of their crossclaim against the Bank and primarily represented the $33,900 purchase price paid by the Sorensons for the property. The balance was to compensate the Sorensons for the cost and inconvenience of having to litigate. Furthermore, Mr. Colvin testified that he did not think the house was worth $40,000; and that he would have bought the house for $33,900, but not for the $39,900 for which it was offered in the newspaper in June 1986. Finally, in their brief the Colvins themselves correctly note that the loss of bargain measure of damages should be used in the case of a breach of a contract to sell land.

The Colvins argue that the property insurance of $40,000 was some evidence of the market value of the property at the time of the alleged breach. The amount of insurance maintained on the property was a term of the agreed judgment, however, and was expressly agreed upon by the Colvins and the Bank. No evidence in the record suggests that this amount reflected the fair market value of the property at the time of the alleged breach rather than a replacement value amount. The Colvins argue on appeal that they suffered economic injury in addition to any purported difference between the contract price and the market price. They argue that had they purchased the property (1) they would have begun to accumulate equity in the property; (2) they would no longer have had to pay rent; and (3) they would have had the tax advantages of home ownership. The Colvins did not present any evidence on these elements of pecuniary damages in the trial court, so we may not consider them now. Our review is limited to those matters in the record which were presented to and considered by the trier of fact. *Hales and Hunter Co. v. Norfolk and W. Ry. Co.* (1981), Ind., 428 N.E.2d 1225, 1227.

■ The Colvins have failed to show evidence of actual pecuniary loss which would support a compensatory damage award. However, the Colvins presented evidence at trial that they had suffered mental anguish and argued that that supported an award of compensatory damages. Compensatory damages for mental anguish are generally recoverable only when the mental anguish is accompanied by, and results from, physical injury. *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 326, 357 N.E.2d 247, 253, *modified,* (1977), 175 Ind.App. 1, 369 N.E.2d 947, on other grounds. The Colvins introduced no evidence to establish that they suffered mental anguish resulting from and accompanied by physical injury.

Indiana courts recognize an exception to the general rule and award compensatory damages in certain tort actions where mental anguish is unaccompanied by physical injury. When a tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance, *Naughgle v. Feeney–Hornak Shadeland Mortuary* (1986), Ind.App., 498 N.E.2d 1298, 1300, *trans. denied,* or when the conduct causing the injury was inspired by

fraud, malice, or like motives and the conduct was intentional, such emotional or mental anguish supports an award of compensatory damages. *First National Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345, 1350. The Colvins argued that the Bank's conduct was fraudulent and caused them mental anguish. The Colvins did present some evidence of mental anguish, but as we decide the case on other grounds, we have not addressed the sufficiency of the evidence of mental anguish.

The essential elements of fraud are (1) a material misrepresentation of past or existing fact, (2) which representation is false, (3) made with knowledge or reckless ignorance of its falsity, and (4) which causes reliance to the detriment of the person relying upon it. *Acra*, 462 N.E.2d at 1348. Although there was evidence to support the first three elements of fraud, we have not discussed that evidence because our determination of the fourth element of fraud is dispositive of the issue of actionable fraud. The Colvins urge that their detrimental reliance on the Bank's misrepresentation is shown by the fact that they informed the Bank in writing on December 3, 1985, that they were exercising their right of first refusal and by the fact that on December 3, 1985, they initiated a loan application with the Rushville National Bank in order to obtain financing for the purchase of the property.

In *McClellan v. Tobin* (1942), 219 Ind. 563, 39 N.E.2d 772, we stated a plaintiff must show that he relied upon a defendant's misrepresentations as an inducement to his action or injurious change of position. *Id.*, 219 Ind. at 570, 39 N.E.2d at 775. "Actionable fraud is not shown where it appears that the hearer acted merely to avoid trouble and litigation and not in reliance on the false statements, ... of the speaker." 14 I.L.E. *Fraud* § 21 (1959).

In *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144, we discussed the issue of detrimental reliance. A purchaser of land was at the closing and had already signed some of the closing papers and put down a $400.00 earnest money deposit when he learned of the subject land contract's balloon payment provision. Two of the realtor's employees advised him that he could back out of the deal, but he decided to continue with the closing. We held that such facts did not indicate that he had detrimentally relied on prior alleged misrepresentations by the realtors. *Id.* at 1147.

The question of reliance is one of fact to be determined by the jury. We will not reweigh the evidence upon an appeal from a jury verdict. *Capitol Dodge v. Haley*, 154 Ind.App. 1 at 6–7, 288 N.E.2d 766 at 769 (1972). However, there was simply no evidence presented that the Colvins relied to their detriment upon any of the statements the Bank made to the Colvins through their lawyer, Levi. The evidence presented at trial showed that Mrs. Colvin called the realtor between November 16 and November 22, 1985, and asked her if the house had sold and for what price, and Mr. Colvin had picked up a loan application from the Rushville National Bank before seeing his attorney on the afternoon of December 2, 1985. However, he had not yet completed it and returned it to the Rushville National Bank. Levi testified that shortly after his second phone call with Wilson, the Bank's attorney, he had received a phone call from the realtor informing him that the property had already been sold. Levi had already instructed Mr. Colvin to prepare a notice that the Colvins planned to exercise their right of first refusal. Levi recontacted Colvin after the realtor's call and told Colvin of the closing, advising him that the written notice to the bank would protect his record for purposes of future litigation. The Colvins tendered their offer to the Bank on December 3, 1985, and completed the loan application at Rushville National Bank that day. The loan officer testified that the Rushville National Bank does not charge an application fee and that she could not recall whether she had charged the Colvins a fee for an appraisal or credit report. The Colvins do not allege having paid a credit report fee.

The Colvins initiated this lawsuit on December 6, 1985, thereby indicating that they were not misled into thinking that the Bank could act upon their right of first

refusal. Just as the facts in *Craig* did not support an allegation of detrimental reliance, the evidence here simply does not support the Colvins' contention that they relied upon the Bank's representations that they could exercise their right of first refusal and obtain the property if they could match the purchase offer within two days. Furthermore, the evidence does not support that either the Colvins' notice to the bank that they were exercising their right of first refusal or their loan application to the Rushville National Bank was to their detriment. As the Colvins failed to show any evidence to support the detrimental reliance element of actionable fraud and failed to prove that the Bank engaged in willful or malicious conduct which was likely to result in an emotional disturbance, the compensatory damages award to the Colvins as a result of mental anguish was not supported by the evidence.

The Bank asserts that even if an award of compensatory damages to the Colvins is supported by the evidence, the $35,000 awarded was clearly an excessive amount and indicated passion, partiality or prejudice or the consideration of some improper evidence on the part of the jury. While it is true that a jury has wide discretion in assessing damages, *Kavanagh v. Butorac* (1966), 140 Ind.App. 139, 145, 221 N.E.2d 824, 828, *trans. denied*, and no particular degree of mathematical certainty is required in awarding damages, *Indiana Bell Telephone Co., Inc. v. O'Bryan* (1980), Ind. App., 408 N.E.2d 178, 184, the general rule is that the amount of damages awarded must be within the scope of the evidence. *Prudential Ins. Co. of America v. Executive Estates, Inc.* (1977), 174 Ind.App. 674, 701, 369 N.E.2d 1117, 1133, *trans. denied.* A judgment is excessive if it cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Persinger v. Lucas* (1987), Ind.App., 512 N.E.2d 865, 868. If clearly unwarranted in amount, the verdict cannot stand. *Levin v. Schuckman* (1971), 150 Ind.App. 254, 260, 276 N.E.2d 208, 212.

The Colvins presented no evidence of any actual pecuniary damages suffered as a result of the Bank's failure to adhere to the agreed judgment's terms. The Colvins also did not present evidence that they had suffered a physical injury resulting from the Bank's conduct nor did they present evidence that the Bank had engaged in willful, malicious conduct likely to cause mental anguish. The Colvins also failed to provide evidence supporting the element of detrimental reliance, an essential element of actionable fraud. Therefore, they did not provide evidence that the Bank had committed a fraud on them which had caused their mental anguish. There is simply no rational basis to support the jury's award of $35,000 compensatory damages. We must conclude that the jury was motivated by passion, partiality or prejudice to have awarded $35,000 in compensatory damages.

Nevertheless, the trier of fact is to be given sound and liberal discretion where damages cannot be defined and calculated with mathematical certainty or by an exact standard. *Kavanagh*, 140 Ind.App. at 145, 221 N.E.2d at 828. Any measure of damages must be flexible enough to vary with the necessities of a situation and any uncertainty must be resolved against the wrongdoer. *Stoneburner*, 408 N.E.2d at 550–51. The law presumes that at least nominal damages result from harm. *American Fletcher National Bank and Trust Co. v. Flick* (1969), 146 Ind.App. 122, 135, 252 N.E.2d 839, 846, *trans. denied.* Also see *Stoneburner*, 408 N.E.2d 545. The Colvins did lose a valuable contractual right when the Bank breached the agreed judgment by failing to provide the Colvins their right of first refusal. Therefore, we can uphold an award of nominal damages of $1.00. The trial court did not err in denying the Bank's motions for judgment on the evidence made on the basis of alleged insufficiency of evidence to support an award of compensatory damages.

*Issue Two*

The Bank asserts that the Colvins failed to prove by clear and convincing evidence that the Bank's conduct in breaching the

agreed judgment was accompanied by malice, fraud, gross negligence or oppressive conduct so as to support any award of punitive damages. The Bank also urges that even if the award of punitive damages was supported by clear and convincing evidence, the $100,000 award was excessive. We will affirm a judgment of punitive damages when the issue of sufficiency of the evidence is raised if, considering only the probative evidence and reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137.

■ Generally, punitive damages are not recoverable in Indiana for breach of contract. *Vernon Fire and Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 607, 349 N.E.2d 173, 179. In order to recover punitive damages in such a case, the plaintiff must prove by clear and convincing evidence that the defendant's actions in breaching the contract were accompanied by malice, fraud, gross negligence or oppressive conduct and that the defendant's acts "were inconsistent with the hypothesis that the tortious conduct was a result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing." *Travelers Indemnity Company v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362. The plaintiff must also establish that the public interest will be served by the deterrent effect that an award of punitive damages would have upon the future conduct of the defendant and parties similarly situated. *Vernon*, 264 Ind. at 608, 349 N.E.2d at 180.

■ As discussed in Issue I, the Colvins did not argue that the Bank acted maliciously and did not prove their assertion that the Bank acted fraudulently. Nevertheless, neither malice nor actual fraud are necessary to support a punitive damage award. The jury could have found by clear and convincing evidence that the Bank's conduct constituted gross negligence or was oppressive. The jury could have rea-sonably inferred that Evans acted oppressively or with gross negligence. He testified that he knew that the Colvins had a right of first refusal, but decided not to call them when he received the Sorensons' purchase offer. Evans admitted that he had not spoken with the Colvins about their interest in purchasing the property, but had based his decision not to call them on realtor Stewart's report that she felt the Colvins were not interested in purchasing the property since they had told her it was too small for them. Since realtor Stewart testified that the Colvins had told her this "early on in 1985" but after April, Record at 424, the jury could have inferred that Evans was grossly negligent in not directly contacting the Colvins and giving them their right of first refusal at the time of the Sorensons' purchase offer in November 1985.

The jury also could reasonably have inferred that when Wilson advised the Colvins on December 2, 1985, that they could exercise their right of first refusal to purchase the property, he knew or should have known that the property had already been sold to the Sorensons and that the Bank no longer retained title to the property. Furthermore, the jury could have reasonably inferred that Wilson acted oppressively or with gross negligence in alleging the Colvins had only two days to exercise their right because the Bank had only two days within which to accept the Sorensons' offer. Such an allegation could have appeared to the jury to be an implication that the Bank still had title to the property. The jury could have reasonably inferred that since Wilson was the Bank's attorney, was aware of the first refusal clause in the agreed judgment, had prepared the warranty deed for the Bank's transfer to the Sorensons', and was in contact with Bank officials during the afternoon of December 2, 1985, Wilson knew or should have known that his statements to the Colvins were inaccurate. Finally, the jury could reasonably have concluded that on December 2, 1985, the Bank was acting to cover its earlier failure to provide the right of first refusal.

The Bank characterizes its conduct through its agents as honest mistakes. Nevertheless, it was for the jury to assess witness credibility and weigh the evidence. We cannot conclude that the probative evidence and reasonable inferences supporting it were insufficient for a reasonable trier of fact to have found that the Colvins proved by clear and convincing evidence that the Bank acted oppressively and with gross negligence. Finally, we cannot conclude that the above-mentioned tortious conduct was the result of a mere mistake of law or fact, an honest error of judgment, or due to overzealousness or mere negligence. The record supports the jury's award of punitive damages.

■ The Bank asserts that even if a punitive damages award was proper, the $100,000 awarded by the jury was clearly excessive and inspired by passion, partiality, prejudice or the consideration of some improper evidence. Once it has been determined that there is a legal basis upon which to premise an award of punitive damages, the amount of the award rests within the sound discretion of the jury. In order to vacate an award as excessive, it must clearly appear to have been the result of passion or prejudice. *Tutwiler v. Snodgrass* (1981), Ind.App., 428 N.E.2d 1291, 1298. To determine if the award was a result of passion or prejudice, we must consider that the purpose of awarding punitive damages is to punish the wrongdoer and deter others from future similar conduct. *Tutwiler*, 428 N.E.2d at 1298. The factors to be considered in reviewing an award of punitive damages are, thus, the nature of the tort, the extent of actual damages, and the economic wealth of the defendant. *Nate v. Galloway* (1980), Ind. App., 408 N.E.2d 1317, 1323, *trans.denied.*

■ We have already discussed the Bank's conduct and we have noted the Colvins' failure to show substantial actual damages. However, in *Keehr v. Consolidated Freightways of Delaware, Inc.* (7th Cir.1987), 825 F.2d 133, 141, the Court interpreted Indiana cases to be consistent with the awarding of punitive damages based on nominal compensatory damages and held that the recent opinions of the Indiana Supreme Court indicate that it would uphold an award of punitive damages in an appropriate case where only nominal damages have been proven. The Court noted that the Supreme Court of Indiana had discredited the notion that punitive damages must be in reasonable proportion to actual damages in *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 317, 362 N.E.2d 845, 849. The Court also noted that a substantial number of states permit punitive damages to be awarded on the basis of nominal damages. We adopt the 7th Circuit's reasoning and hold that under Indiana law an award of only $1.00 in nominal damages may support an award of punitive damages.

As to consideration of the factor of the economic wealth of the defendant, the Supreme Court of Indiana has stated that where punitive damages are to be assessed, the wealth of the defendant may be shown so that damages are assessed in an amount that will deter him. The Court said:

"Such a rule is based on the theory that it will take a greater amount of penalty to dissuade a rich person than a poor person from oppressive conduct. However, there appears to be no requirement that evidence of worth be submitted in cases of punitive damages."

*Hibschman Pontiac*, 266 Ind. at 317, 362 N.E.2d at 849. Although we have since stated that such factors as the defendant's economic wealth and income should be considered, *e.g., Indiana and Michigan Electric Co. v. Stevenson* (1977), 173 Ind.App. 329, 341, 363 N.E.2d 1254, 1263, *trans. denied,* we quoted *Hibschman Pontiac* with approval as recently as *Tutwiler*, 428 N.E.2d at 1299, which was written in 1981. Therefore, we find that the Bank's assets and income are relevant factors to consider in determining whether the jury's award of punitive damages was not excessive. However, we do not find that an absence of such evidence of the Bank's economic wealth necessarily renders the amount of punitive damages so speculative as to be excessive. The jury also had the nature of the tortious conduct to consider.

As previously stated, the purpose of punitive damages is to deter the wrongdoer and others from similar conduct in the future. Punitive damages are particularly appropriate in a case such as the present one as public policy cannot condone the willful and deliberate disregard for contractual obligations which the Bank exhibited. The award of punitive damages of $100,000 will deter the Bank from similar conduct toward other customers in the future.

In conclusion, there was no evidence to indicate that the jury's award of punitive damages was the result of passion or prejudice. The evidence was clear and convincing on the issue of punitive damages and the jury's award of punitive damages should be upheld.

Therefore, we affirm the judgment, but reduce the award of compensatory damages to nominal damages of One Dollar ($1.00), and affirm the judgment for punitive damages.

ROBERTSON, J., concurs.

HOFFMAN, J., concurs in part and dissents in part with separate opinion.

HOFFMAN, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's disposition of the second appellate issue, in which the award of punitive damages is upheld. The Colvins failed to prove by clear and convincing evidence that the breach of the agreed judgment was accompanied by malice, fraud, gross negligence or oppressive conduct.

The majority initially suggests that an award of punitive damages may be supported by evidence that the Bank's chief executive officer, Evans, signed a purchase agreement with the Sorensons without honoring the right of first refusal held by the Colvins. According to the majority, "[t]he jury could have reasonably inferred that Evans acted oppressively or with gross negligence" when he failed to notify the Colvins of the Sorensons' purchase offer.

While the evidence upon which the majority relies may be consistent with the hypothesis of gross negligence or oppressiveness, the evidence is also entirely consistent with the hypothesis that Evans' conduct was the result of a mistake of fact or an honest error in judgment. Evans indicated that he based his decision not to call the Colvins on the realtor's report that they were not interested in buying the property which was the subject of the agreed judgment. The realtor was working with the Colvins to help them locate a larger home. The majority, in essence, permits an award of punitive damages upon inferences permissibly drawn from evidence of no greater persuasive value than that required to uphold a finding of breach of the agreed judgment. See *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 363.

To sustain the award of punitive damages, the majority also focuses upon the conduct of the Bank's attorney, Wilson. Wilson advised the Colvins that they had two days in which to exercise their right of first refusal, when in fact the Bank no longer held title to the property in question. The majority proposes that "the jury could have reasonably inferred that Wilson acted oppressively or with gross negligence in alleging the Colvins had only two days to exercise their right." Again, the evidence is equally consistent with the hypothesis that the tortious conduct was the result of some noniniquitous human failing, such as overzealousness. Such is not the stuff of which punitive damage awards are made.

The Supreme Court has adopted a standard of clear and convincing evidence to sustain an award of punitive damages. "The propriety of the clear and convincing evidence standard is particularly evident in contract cases, because the breach itself for whatever reason, will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent." *Travelers Indem. Co., supra,* at 363. The allegations of fraud, gross negligence and oppressive conduct in the instant case were not borne out by clear and convincing evidence.

For the foregoing reasons, I dissent. I vote to vacate the award of punitive dam-

ages as unsupported by clear and convincing evidence.